IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 92-8084
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERTO PUENTE, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

(January 21, 1993)

Before KING, JOHNSON, and DUHÉ, Circuit Judges.

JOHNSON, Circuit Judge:

Following a bench trial, Roberto Puente, Jr. was convicted of making a false statement to a government agency in violation of 18 U.S.C. § 1001.  Puente raises two arguments on appeal.  Puente argues first that the government did not carry its burden of proving the elements of a § 1001 violation, and second that his conduct fell within the "exculpatory no" exception to § 1001.  Finding no error, this Court affirms the judgment of the district court.


## I.  Facts and Procedural History

Puente and his father were two of the principal officers of

Eagle Contractors, Inc.  In their capacity as company officers, they submitted a bid on the renovation of a housing project in Eagle Pass, Texas.  The project was partially administered and funded by the U.S. Department of Housing and Urban Development (HUD).  The bidding process required that the parties fill out a "Prior Participation Certification" form documenting their prior involvement with federal building projects.  By signing this form, the parties also certified that they had never been convicted of a felony.  Puente and his father both signed the form despite the fact that each had a previous felony conviction.

At a public board meeting held for the purpose of recommending acceptance of a bid, John Melton, who was in charge of the project for HUD, recommended that Eagle Contractors be awarded the project.  Melton was then informed of the Puentes' felony convictions by another board member.  Melton later investigated this allegation and obtained documentation confirming that both Puente and his father had previously been convicted of a felony.  However, there is no HUD rule that prohibits convicted felons from being awarded government contracts, and Melton continued to recommend that Eagle Contractors be awarded the contract.

Though Melton still favored Eagle Construction, he provided the information concerning the Puentes' misrepresentations to the legal counsel for HUD.  After a review of the documents submitted by the Puentes, HUD officials determined that Puente and his father had actually signed a reduced copy of the previous

2

participation form that had been provided in the project manual.[1] This form was very difficult to read, and HUD officials recognized that Puente and his father might have misunderstood the certification requirements. Melton was instructed to give the Puentes a chance to sign the full-size form at a preconstruction meeting. Without mentioning his investigations or specifically pointing out the certification requirement, Melton asked the Puentes if they had read the form and were willing to sign. After they signed the form, HUD officials rejected their bid and awarded the project to the number two bidder.

Puente and his father were subsequently charged with violating 18 U.S.C. § 1001 which makes it a crime to knowingly and willfully misrepresent a material fact in a matter within the jurisdiction of a department or agency of the United States. Following a bench trial, Puente was convicted, and his father was acquitted. Puente now appeals.

## II. Discussion

A. *Sufficiency of the Evidence*

A violation of 18 U.S.C. § 1001 requires five elements: "(1) a statement, that is (2) false (3) and material, (4) made with the requisite specific intent, [and] (5) within the purview of government agency jurisdiction." *United States v. Lichenstein*,

---

[1] The actual HUD form measures 11 x 14 inches. The form included in the project manual had been reduced to 8.5 x 11 inches.

610 F.2d 1272, 1276 (5th Cir.), *cert. denied*, 447 U.S. 907 (1980). Puente argues that the prosecution did not satisfy its burden of proof for two of these elements--specifically materiality and intent.

In reviewing the sufficiency of evidence for a bench trial, this Court applies a substantial evidence standard. *United States v. Jennings*, 726 F.2d 189, 190 (5th Cir. 1984). The question before this Court is whether, when viewing the evidence in the light most favorable to the government, the evidence is sufficient to justify the trial judge, as trier of the facts, in concluding beyond a reasonable doubt that the defendant was guilty. *United States v. Richardson*, 848 F.2d 509, 511 (5th Cir. 1988).

## 1. Materiality

A material statement is one that has "a natural tendency to influence, or [one that is] capable of affecting or influencing, a government function." *United States v. Swaim*, 757 F.2d 1530, 1534 (5th Cir.), *cert. denied*, 474 U.S. 825 (1985). Actual influence or reliance by a government agency is not required. The statement may still be material "even if it is ignored or never read by the agency receiving the misstatement." *Id*. (quoting *United States v. Diaz*, 690 F.2d 1352, 1358 (11th Cir. 1982)).

Puente argues that his certification was not material because a bidder can still be awarded a contract even if he has been convicted of a felony. Previous case law makes it clear,

4

however, that the standard for a § 1001 violation is not whether the false statement actually influenced a government decision or even whether it probably influenced the decision; the standard is whether the misrepresentation was <u>capable</u> of influencing the agency decision. In this case, the stated purpose of the Previous Participation Certification is to allow HUD "to determine if [the bidder] meet[s] the standards established to ensure that all principal participants in HUD projects will honor their legal, financial and contractual obligations and are acceptable risks from the underwriting standpoint of an insurer, lender or government agency." By signing the Previous Participation Certificate, Puente provided HUD with information in a number of areas that could be relevant to any agency decision on whether to approve a bidder's participation in a government project. In addition to certifying that he had never been convicted of a felony, Puente also certified that no mortgage on any of his previous projects had ever been in default; that there were no unresolved findings raised by government audits or investigations of his previous projects; that he had not been suspended or disbarred from doing business with any government agency; and that he had never defaulted on an obligation covered by a surety or performance bond. While it may be true that Puente would have been awarded the contract even if he had answered truthfully, his misrepresentation deprived HUD of the opportunity to determine, based upon all relevant information, which bidder was best qualified to complete the job.

Because HUD officials could have viewed the bid differently if Puente had answered correctly, the district court did not err in holding that Puente's misrepresentation was "capable of affecting or influencing" the agency decision.

## 2. Intent

A conviction under § 1001 requires proof that a defendant had the specific intent to make a false or fraudulent statement "deliberately or at least with reckless disregard of the truth and with the purpose to avoid learning the truth." *United States v. Tamargo*, 637 F.2d 346, 351 (5th Cir.), *cert. denied*, 454 U.S. 824 (1981). In this case, Puente claims that he never read the HUD form, and the prosecution introduced no evidence that showed that Puente knew what he was signing. Instead, the district court concluded that, by signing the form without reading it, Puente acted with "a reckless disregard of the truth and with the purpose to avoid learning the truth."

This Court finds no error in the district court's judgment. "Reckless indifference" has been held sufficient to satisfy § 1001's scienter requirement so that a defendant who deliberately avoids learning the truth cannot circumvent criminal sanctions. *See United States v. Schaffer*, 600 F.2d 1120, 1122 (5th Cir. 1979). Likewise, a defendant who deliberately avoids reading the form he is signing cannot avoid criminal sanctions for any false statements contained therein. Any other holding would write § 1001 completely out of existence.

6

*B.   The "Exculpatory No" Doctrine*

Puente's final argument is that his false statement falls within the "exculpatory no" exception to liability under § 1001. The "exculpatory no" doctrine exempts "mere negative responses" to questions posed by investigating agents from the reach of § 1001.  *Paternostro v. United States*, 311 F.2d 298, 305 (5th Cir. 1962); *see also United States v. Berisha*, 925 F.2d 791, 796 (5th Cir. 1991).  The doctrine originates, at least in part, from a "latent distaste for an application of [§ 1001] that is uncomfortably close to the Fifth Amendment."  *United States v. Lambert*, 501 F.2d 943, 946 n.4 (5th Cir. 1974) (en banc).  Puente argues that his signature on the full-size form was exculpatory because he had already signed the reduced form; if he had refused to sign the second form he would have incriminated himself by taking an inconsistent position.

Whatever the merits of this argument, Puente did not raise it before the district court.  When reviewing a theory raised for the first time on appeal, this Court applies a "plain error" standard and only reverses errors of a nature that they would result in a miscarriage of justice if not remedied.  *United States v. Young*, 470 U.S. 1, 15-16 (1985); *United States v. Contreras*, 950 F.2d 232, 239 (5th Cir. 1991), *cert. denied*, 112 S.Ct. 2276 (1992).  Puente's "exculpatory no" argument simply does not rise to this level.

## III.  Conclusion

For the reasons stated, this Court holds that the evidence

7

was sufficient to sustain Puente's conviction for a violation of 18 U.S.C. § 1001.  Also, we hold that it was not plain error for the district court to acquit Puente under the exculpatory no doctrine.  Accordingly, the judgment of the district court is affirmed.