**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 01-20198

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

BERNIDA FAY WRIGHT, also known as Bernida Steele,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
(00-CR-451)

July 3, 2002

Before SMITH, BENAVIDES, and PARKER, Circuit Judges.

PER CURIAM:[*]

Bernida Fay Wright was tried before a jury and convicted of six counts of fraud to obtain federal employee's compensation in violation of 18 U.S.C. § 1920, and one count of making false statements to a government officer in violation of 18 U.S.C. § 1001(a)(2). On appeal, Wright argues that the evidence supporting

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-1-

her conviction under all seven counts was insufficient, and that the district court erred in permitting evidence of her prior conviction in state court for theft of welfare benefits. For the reasons stated below, we affirm.

## I. BACKGROUND

Wright was employed by the United States Postal Service (hereinafter "USPS") on several occasions between 1985 and 1997. She was a temporary employee, and her dates of service were generally limited to a few months or weeks at a time. Following each separation from the USPS, Wright submitted an application for re-employment.

Wright reported to State Farm Insurance that, on November 18, 1994, an unidentified Hispanic male driving a red and black truck backed into her vehicle, and sped away. Wright obtained a diagnosis indicating a cervical spine strain, a thoracic spine strain, and a third lumbar sacral spine strain. On November 28, 1994, a pre-employment physical was performed on Wright. At the time of the physical Wright did not mention any injuries related to the November 18th accident, and the doctor determined that she was capable of performing heavy lifting duties for the USPS. After receiving a clean bill of health, Wright submitted an application for re-employment to the USPS on November 29, 1994. Wright was rehired on December 5, 1994, and worked for the USPS until December 31, 1994.

On January 30, 1995, Wright reported the November 18th accident to State Farm Insurance claiming neck and back injuries ("neck pop" and "upper and lower back was in pain"). In conjunction with her claim to State Farm Insurance, Wright reported that she had been gainfully and continuously employed at Custom Fabric Upholstery since October 1990 as a receptionist earning $225

a week but that she could not work from November 18, 1994, to January 30, 1995, due to injuries sustained in the accident. Wright subsequently received a settlement from State Farm Insurance in the amount of approximately $4,600.

On April 19, 1995, Wright submitted another application to the USPS for re-employment indicating that she had been involved in a single automobile accident occurring on December 19, 1994, when a white cargo van backed into her vehicle and sped away. Wright was rehired by the USPS on June 24, 1995. Wright reported that on July 4, 1995, she was involved in a third automobile accident when a pickup truck ran into her vehicle in a grocery store parking lot and then fled.

On Monday, July 10, 1995, Wright reported for work at the USPS Oak Forest Dispatching Dock in Houston, Texas. At approximately 10:45 A.M., Wright's supervisor, Sheila Applin, observed Wright brushing off her pants. Wright told Applin that she had fallen but was okay, and Wright worked the remainder of the day. On July 12, 1995, Wright sought medical treatment at a Houston clinic. Later that day, Wright telephoned to inform Applin that she had been injured in the fall on July 10th, and to inquire about medical forms. When Wright returned to the postal station, she was walking with the assistance of a cane. While at the postal station, Wright filed a Federal Employee's Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation (hereinafter "Form CA-1") claiming "pain in [her] lower back, [and] muscle spasms [in her] center back, neck, shoulders, and thighs."

The following day, July 13, 1995, Wright sought medical attention from a chiropractor, Dr. Burdett, for injuries sustained in the July 4th accident. Dr. Burdett continued to treat Wright until mid August. Wright never told Dr. Burdett that she had

-3-

fallen at the postal station on July 10, 1995. While receiving treatment from Dr. Burdett, Wright was also receiving treatment from two other doctors, Dr. Shafie and Dr. Watkins, for her alleged fall at the postal station. Wright continued to receive medical treatment for approximately the next two years.

On August 10, 1995, Wright reported the July 4th accident to Farmer's Insurance claiming injuries which she described as "neck pop and have pains lower center back, left right shoulders, buttocks, left/right thighs, left/right legs, pinched nerves, tissue/muscle damage." In conjunction with the report to Farmer's Insurance, Wright claimed employment at Custom Fabric Upholstery earning $300 a week as a receptionist but indicated that she was not able to work between July 5, 1995 and July 28, 1995 due to injuries sustained in the accident. In late August 1995, Wright was examined by Dr. Barnes at the request of the USPS. In his report dated August 31, 1995, Dr. Barnes's described Wright as "a lady with a history compatible with lumbar strain with a good deal of non-physiologic findings which are probably indicative of some emotional component here." The report concluded with an expectation for a full recovery in approximately one month.

Between January 15, 1996, and April 15, 1997, Wright submitted four claims to the USPS seeking reimbursement for travel expenses (hereinafter "Form 1164") claiming a total of 114 trips to various doctors encompassing more than 10,000 miles. In April 1997, United States Postal Inspection Service began investigating Wright in connection with her fall, and her application for and receipt of benefits. During the investigation, Wright was videotaped on several occasions between April 1997 and January 1998. In April and May of 1997, Wright was videotaped moving furniture at Custom Fabric Upholstery. In July 1997, Wright was videotaped at a

-4-

physical therapy clinic using a cane, and later that day at a Kmart store without the use of a cane. Wright enrolled at a fitness center in October 1997, and frequented the facility through December 1997.

On February 8, 1999, Wright was convicted in Texas state court for theft of medicaid, food stamps, and AFDC (Aid for Families with Dependent Children) benefits. Wright received a two year jail term for her conviction. The two year term was subsequently suspended, and Wright was placed on community supervision for five years.

On July 5, 2000, Wright was indicted in federal court on seven counts of fraud and making false statements in violation of 18 U.S.C. §§ 1001(a)(2) and 1920. A jury convicted Wright on all seven counts on October 24, 2000. Following her conviction, Wright was sentenced to a term of 21 months imprisonment and three years supervised release on each of the seven counts, all counts running concurrently, payment of $52,740.43 in restitution, and a $700 special assessment.

## II.  STANDARD OF REVIEW

"This Court reviews jury verdicts with great deference and evaluates the evidence in the light most favorable to the verdict and affords the government the benefit of all reasonable inferences and credibility choices." *United States v. McCauley,* 253 F.3d 815, 818 (5th Cir. 2001) (internal quotations and citations omitted). "In reviewing a challenge to the sufficiency of the evidence, we must determine whether a rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt." *United States v. Barton,* 257 F.3d 433, 439 (5th Cir. 2001) (citing *United States v. Mergerson,* 4 F.3d 337, 341 (5th Cir. 1993). "If the evidence viewed in the light most favorable to the prosecution

gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, a defendant is entitled to a judgment of acquittal." *United States v. Brown,* 186 F.3d 661, 664 (5th Cir. 1999) (internal quotations omitted) (quoting *United States v. Schuchmann,* 84 F.3d 752, 754 (5th Cir. 1996). We review a district court's evidentiary rulings in a criminal case under a heightened abuse of discretion standard. *See United States v. Bentley-Smith,* 2 F.3d 1368, 1377 (5th Cir. 1993) (citation omitted).

### III. DISCUSSION

On appeal, Wright claims the evidence supporting her conviction under all seven counts is insufficient, and that the district court erred in admitting evidence of her prior conviction for theft of welfare benefits. Counts One through Six, Count Seven, and the admission of Wright's prior conviction are each addressed in turn below.

*A. 18 U.S.C. § 1920 Violations - Counts One Through Six*

Count One of the indictment alleged that Wright falsified Form CA-1 in violation of 18 U.S.C. § 1920 by misrepresenting the circumstances of her purported injury at the Oak Forest Dispatching Dock. Counts Two through Five alleged that Wright submitted false claims for reimbursement for travel expenses (hereinafter "Form 1164") in violation of 18 U.S.C. § 1920 by misrepresenting the number of times she traveled to the doctor's office, associated costs, and her mileage. Count Six alleged that Wright submitted a false certified declaration of employment (hereinafter "Form EN-1032") in violation of 18 U.S.C. § 1920 in that she falsely declared that she had not been employed, self-employed, or involved in any business enterprise for the 15 months prior to October 27,

1997.

Proving that Wright committed an offense under 18 U.S.C. § 1920[1] requires the government to show that she: 1) made or used a false statement or report in connection with the application for or receipt of compensation or other benefit or payment under Subchapters I or III of Chapter 81 of Title 5 of the United States Code; 2) knew the statement or report to be false, fictitious, or fraudulent; and 3) knowingly and willfully falsified, concealed, or covered up the statement or report. 18 U.S.C. § 1920.

Wright contends that the government failed to produce any evidence pertaining to Count One. Specifically, Wright asserts that the government failed to show that she did not suffer an injury on July 10, 1995, and that her Form CA-1 contained materially false, fictitious, and fraudulent statements. Wright submitted Form CA-1 stating that the "20 lbs. hamper wheels locked as I was pushing it and threw me back. I lost my balance off the curve and fell on the concrete." The government, however, presented photographs showing that there was no curb that Wright could have fallen off of at the Oak Forest facility, but rather a gentle slope from the building's foundation to the parking lot falling approximately four inches over a span of approximately five

---

[1]Section 1920, entitled "False statement or fraud to obtain Federal employee's compensation," states in relevant part:

Whoever knowingly and willfully falsifies, conceals, or covers up a material fact, or makes a false, fictitious, or fraudulent statement or representation, or makes or uses a false statement or report knowing the same to contain any false, fictitious, or fraudulent statement or entry in connection with the application for or receipt of compensation or other benefit or payment under subchapter I or III of chapter 81 of title 5, shall be guilty of perjury.

18 U.S.C. § 1920.

feet. Wright's supervisor, Sheila Applin, testified that she saw Wright brushing off her pants but did not see her fall. Applin testified that Wright informed her of the fall but stated that she was "okay," and continued working for the remainder of the day. Applin further testified that upon hearing of the accident she immediately inspected the hamper, and found that the wheels operated properly. Additional evidence was presented showing that the Oak Forest facility used 40 pound hampers, and did not use 20 pound hampers as indicated on Wright's Form CA-1.

The government presented evidence of Wright's automobile accident in November of 1994 where she filed an insurance claim for back injuries. The government also presented evidence of Wright's automobile accident on July 4, 1995, only six days prior to her purported fall at the postal facility, and again Wright submitted an insurance claim for back injuries. Additionally, the government presented testimony from Dr. Barnes who described Wright as having a history compatible with lumbar strain but also a good deal of non-physiologic findings which were probably indicative of an emotional component. Finally, Dr. Barnes testified that he expected Wright to be fully recovered in approximately one month.

Wright maintains that the government's evidence was insufficient to show that the information submitted on Forms 1164 was false as alleged in Counts Two through Five. For the time period between January 15, 1996, and April 15, 1997, Wright submitted four Forms 1164 seeking reimbursement for toll expenses, other costs, and mileage for a total of 114 trips traveling more than 10,000 miles to various doctors. Jan Tarpley, a United States Postal Inspector, testified that her investigation and review of the physician's records revealed that during the period in question, 58 of the claimed trips did not occur, and the mileage

for every visit claimed by Wright was overstated. Wright argues, however, that testimony from her doctors revealed inadequacies in their record keeping concerning patient visits in that some sign-in sheets were missing. Wright also argues that Inspector Tarpley's own investigation indicated that she was entitled to $297.09 in reimbursement for visits which were not claimed.

We are not persuaded by Wright's arguments regarding Counts Two through Five. Counts Two through Five involve false representations concerning reimbursement for costs and mileage submitted on Form 1164. Trips which were not reported are not relevant to a charge under 18 U.S.C. § 1920. Furthermore, Inspector Tarpley testified that in performing her calculations on the number of visits Wright made to the doctor's office, she was given credit for a claimed visit if the sign-in sheet for that particular day was missing.

Wright argues that the government failed to produce any evidence that she was employed, self-employed, or involved in any business enterprise for the 15 months prior to her submission of Form EN-1032 on October 27, 1997, as alleged in Count Six. The government, however, contends that Inspector Tarpley's video tapes of Wright moving furniture at her husband's upholstery shop in April and May of 1997 are evidence of her employment within the time period in question. The government further contends that Wright "repeatedly claimed to insurance companies that she was gainfully employed during the 15-month period antedating October 27, 1997."

Although the government did present evidence that Wright claimed gainful employment to insurance companies, the claims made by Wright covered the time periods from October 1990 to January 1995, and July 5, 1995, to July 28, 1995. These time periods do

not fall within the 15 month period prior to Wright's submission of Form EN-1032 on October 27, 1997. The video tapes, however, provide evidence that Wright moved furniture at a place of business. The jury was entitled to make the reasonable factual inference that she did so for pay. *See Denton v. Morgan*, 136 F.3d 1038, 1044 (5th Cir. 1998) (jury entitled to make "reasonable factual inferences").

Form CA-1, Forms 1164, and Form EN-1032 were all submitted in connection with the application for or receipt of compensation or other benefits or payments under Title 5 of the United States Code. The government presented evidence in support of its arguments that Wright knowingly and wilfully submitted the forms containing information which she knew to be false. Finding the government's evidence to be credible, the jury determined that the government satisfied its burden under 18 U.S.C. § 1920. Viewing the government's evidence in the light most favorable to the jury's verdict, and affording the government the benefit of all reasonable inferences, we find the evidence sufficient for a reasonable trier of fact to find guilt beyond a reasonable doubt on Counts One through Six.

*B. 18 U.S.C. § 1001(a)(2) Violations - Count Seven*

Count Seven alleged that Wright made false statements to a government officer in violation of 18 U.S.C. § 1001(a)(2) when she told Inspector Tarpley, that she had: 1) done nothing to worsen her medical condition; 2) reported all of her injuries to the USPS on USPS employment applications; 3) actually visited a doctor on each date that she claimed reimbursement for mileage; 4) not worked since 1995; and 5) never worked at Custom Fabric Upholstery. Wright contends that the jury's findings of guilt on Count Seven is inconsistent with the jury's findings of guilt on Count One in that

Wright could not be guilty of making a false statement concerning the worsening of her medical condition if she did not actually suffer an injury as alleged in Count One. Wright also contends that the government failed to show any evidence that she knowingly made materially false, fictitious, and fraudulent statements when she claimed that she had not worked since 1995, or ever worked at Custom Fabric Upholstery. Finally, Wright maintains that the government's evidence was insufficient to show that she knowingly made materially false, fictitious, and fraudulent statements when she claimed that she had actually gone to the doctor on each date she claimed reimbursement for mileage because some of the doctor's sign-in sheets were missing.

Proving the commission of an offense under 18 U.S.C. § 1001(a)(2)[2] requires the government to show that Wright: 1) knowingly and willfully; 2) made a statement; 3) to a federal agency; 4) that was false; 5) and material. 18 U.S.C. § 1001(a)(2); *See also United States v. Puente,* 982 F.2d 156, 158 (5th Cir. 1993). A statement is material if it had a natural tendency to influence the decision of the decision making body to which it was addressed. *See Kungys v. United States,* 485, U.S. 759, 772 (1988). It is not necessary for the government to prove that Wright committed each act listed in a particular count of the

---

[2]Section 1001(a)(2), entitled "Statements or entries generally," states:

Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully makes any materially false, fictitious, or fraudulent statement or representation shall be fined under this title or imprisoned not more than 5 years, or both.

18 U.S.C. 1001(a)(2).

-11-

indictment. Rather, "the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *United States v. Mann,* 161 F.3d 840, 857 (5th Cir. 1998) (citation omitted).

Count Seven pertains to statements Wright made to Inspector Tarpley concerning her eligibility for receipt of compensation and other benefits under Title 5 of the United States Code. The first, second, third, and fifth elements were satisfied for all acts contained in Count Seven when Wright gave her statements to Inspector Tarpley during their interview. The government presented evidence of the fourth element, falsity of the statements, with respect to at least two of the acts alleged in Count Seven. Specifically, the government presented evidence in Wright's own handwriting where she claimed employment as a receptionist at Custom Fabric Upholstery on two separate occasions. The government also presented evidence that Wright failed to visit a doctor on each date that she claimed reimbursement for mileage, and that the mileage for each visit was overstated. Therefore, we find the evidence sufficient for a reasonable trier of fact to find Wright guilty beyond a reasonable doubt on Count Seven.

*C. Admission of Evidence*

Wright argues that the district court erred in admitting extrinsic evidence under Rule 404(b) of the Federal Rules of Evidence for the purpose of showing lack of mistake or accident. Specifically, Wright maintains that the testimony regarding her prior conviction in state court for theft of welfare benefits, and the introduction of a certified copy of the conviction were irrelevant, unfairly prejudicial, and thus inadmissible under Rules 403 and 404(b) of the Federal Rules of Evidence.

Under Rule 403, evidence which is otherwise relevant "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. Rule 404(b) reads:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of the trial, or during the trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

FED. R. EVID. 404(b).

The government argues that the evidence in question was admissible under Rule 404(b) for the purpose of showing that Wright's submission of various forms containing false information was not a mistake or accident. The government contends that Wright's counsel opened the door for the admission of the evidence in her opening statement when she told the jury:

> And what they have to prove to you beyond a reasonable doubt is that Ms. Wright had the specific intent to defraud, not that she filled out forms sloppily or did it by accident or maybe she didn't remember what day she actually went to the doctor since she went so often.

Wright asserts that she rested after the government's case-in-chief, called no witnesses, and presented no evidence requiring rebuttal. Wright maintains that she was not raising mistake or accident as a defense but merely informing the jury of the

-13-

government's legal burden at trial. The government argues, however, that Wright placed absence of mistake at issue when she pleaded not guilty to Counts One through Seven.

In *United States v. Beechum,* 582 F.2d 898, 911 (5th Cir. 1978), we established a two-part test for determining the admissibility of evidence under Rule 404(b). "First, the extrinsic offense evidence must be relevant to an issue other than [the] defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must also meet the other requirements of Fed. R. Evid. 403." *Bentley-Smith,* 2 F.3d at 1377.

Wright pleaded not guilty to all seven counts, and by doing so, she placed absence of mistake at issue, and thereby satisfied the first prong of the *Beechum* test. *See United States v. Alarcon,* 216 F.3d 416, 424 (5th Cir. 2001) (citing *United States v. Doggett,* 230 F.3d 160, 167 (5th Cir. 2000). The second prong of the *Beechum* test presents a close call. Nevertheless, we are mindful of the fact that the probative value of an extrinsic offense correlates positively with its likeness to the offense charged. *See Beechum,* 582 F.2d at 915. In light of the district court's limiting instructions upon entry of the evidence and at the close of the case, the defense counsel's comments in her opening statement, and the similarity between the extrinsic evidence and the offenses charged in the instant case, we find no abuse of discretion on the part of the district court in admitting evidence of Wright's prior conviction.[3]

---

[3]We note that on appeal, Wright asserts that the district court failed to perform an on-the-record balancing test between the probative and prejudicial value of the evidence in question. "Normally, the trial court must explicitly perform this analysis on

-14-

### IV. CONCLUSION

For the foregoing reasons, we AFFIRM Wright's convictions.

---

the record; however, if the party objecting to the admission fails to request this analysis, the trial court need not perform it on the record." *Alarcon,* 216 F.3d at 424.  The record reveals no request for an on-the-record balancing analysis.