08-4921-cr
USA v. Hasan

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2009

(Argued: October 6, 2009)                                    Decided: November 10, 2009)

Docket No. 08-4921-cr

UNITED STATES OF AMERICA,

*Appellee*,

v.

SYED HASAN,

*Defendant-Appellant.*

Before: CABRANES and SACK, *Circuit Judges*, and RAKOFF, *District Judge.*[*]

———————

Defendant Syed Hasan ("Hasan") appeals from an October 3, 2008 judgment of the United

States District Court for the Eastern District of New York (Sandra L. Townes, *Judge*) convicting him,

after a jury trial, of various crimes, including making a false statement on a passport application in

violation of 18 U.S.C. § 1542. On appeal, Hasan argues, *inter alia*, that the evidence was insufficient

to convict him because the evidence failed to establish that he made a material misstatement on the

passport application. The question of whether § 1542 has a materiality requirement is a matter of

first impression in this Circuit. After reviewing the plain language of the statute, we conclude that

§ 1542 does not require that the false statement on a passport application be "material."

We also conclude that the evidence was sufficient to support defendant's various convictions

———

[*] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

1

and that the District Court did not err in sentencing defendant.  Finally, we dismiss several of

defendant's claims of ineffective assistance of counsel, and we decline to consider defendant's

remaining claims of ineffective assistance of counsel on direct appeal.

Affirmed.

B. ALAN SEIDLER, New York, NY, *for Defendant-Appellant.*

DANIEL A. SPECTOR, Assistant United States Attorney (Benton J. Campbell, United States Attorney for the Eastern District of New York, and Jo Ann M. Navickas, Assistant United States Attorney, *on the brief*), United States Attorney's Office for the Eastern District of New York, Brooklyn, NY, *for Appellee.*

JOSÉ A. CABRANES, *Circuit Judge*::

Defendant Syed Hasan ("defendant" or "Hasan") appeals from an October 3, 2008

judgment of the United States District Court for the Eastern District of New York (Sandra L.

Townes, *Judge*) convicting him, after a jury trial, of various crimes.  Specifically, Hasan was convicted

of one count each of making a false statement on a passport application, in violation of 18 U.S.C.

§ 1542,[1] conspiracy to commit kidnapping, in violation of 18 U.S.C. § 371,[2] and international parental kidnapping, in violation of 18 U.S.C. § 1204(a).[3] Hasan was sentenced principally to fifty-two months' imprisonment. On appeal, Hasan argues that (1) the evidence was insufficient to convict him; (2) the sentence imposed was unreasonable; and (3) he received ineffective assistance of counsel.

## BACKGROUND

We present below the relevant evidence presented at trial, viewed in the light most favorable

---

[1] This statute provides, in relevant part, as follows:

Whoever willfully and knowingly makes any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws; . . . [s]hall be fined . . ., imprisoned . . ., or both.

18 U.S.C. § 1542.

[2] This statute provides, in relevant part, as follows:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371.

[3] This statute provides as follows:

Whoever removes a child from the United States, or attempts to do so, or retains a child (who has been in the United States) outside the United States with intent to obstruct the lawful exercise of parental rights shall be fined under this title or imprisoned not more than 3 years, or both.

18 U.S.C. § 1204(a).

3

to the government.  *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).

Hasan entered into an arranged marriage with Dr. Ayesha Taqueer.  Soon after they married, Hasan became verbally and physically abusive.  The couple attempted to resolve their problems, and in February 2005, Dr. Taqueer became pregnant.  Throughout her pregnancy, however, Hasan continued to be verbally and physically abusive.  On October 28, 2005, Dr. Taqueer gave birth to a son, Syed Muzammil Hasan ("Muzammil").

In December 2005, Hasan suggested that he and Dr. Taqueer obtain a passport for Muzammil, so that in the future he could visit relatives in India.  At trial, Dr. Taqueer testified that she signed the third page of the passport application but never saw the first two pages, which set forth the mailing address to which the passport would be sent.  Importantly, Dr. Taqueer signed the third page of the form three days before Hasan signed the first two pages.  Although Dr. Taqueer testified that she believed the passport would be sent to the family home in Brooklyn, Hasan had listed his brother's South Carolina address as Muzammil's residence and mailing address on the first two pages of the application.

On Friday, January 13, 2006, Dr. Taqueer went to the Brooklyn home of Abdul Abuzaid—a neighbor who cared for Muzammil during the week while Dr. Taqueer and Hasan worked—to bring Muzammil home for the weekend.  When she arrived at Abuzaid's apartment, Abuzaid informed her that Hasan had taken the child.  Hasan and Muzammil, however, were not at the family home.  Dr. Taqueer attempted to call Hasan numerous times, but Hasan never answered his phone.  He later called from a pay phone to inform Dr. Taqueer that his mother had taken Muzammil to South Carolina to the home of Hasan's brother.  Dr. Taqueer demanded that Hasan return Muzammil to her immediately, but Hasan refused.  Dr. Taqueer then moved out of the family home and into a

4

friend's apartment, which was also in Brooklyn. Over the next several weeks, Dr. Taqueer repeatedly contacted Hasan and Hasan's family in South Carolina to demand that they return Muzammil, but they refused.

Because Hasan refused to cooperate, Dr. Taqueer hired an attorney, who recommended that she file a petition in Family Court to obtain a court order for the child's return. Upon Dr. Taqueer's informing Hasan that she had retained an attorney, Hasan fled Brooklyn, leaving the family home and his job without notice.

Several weeks later, Hasan informed Dr. Taqueer that his parents had taken Muzammil to India, but he refused to provide contact information. Over the next several months, Dr. Taqueer repeatedly demanded that Hasan return the child to her; he continually refused. Dr. Taqueer offered to travel to India to get Muzammil, but again, Hasan refused. Instead, he insisted that he would never return Muzammil unless Dr. Taqueer reconciled with him and dropped her petition pending in the Family Court. Dr. Taqueer refused these demands.

Beginning in May 2006, Dr. Taqueer sought the assistance of the Federal Bureau of Investigation ("FBI") to find Muzammil. An FBI special agent provided Dr. Taqueer with a recording device and instructed her to record any conversations she had with Hasan. She recorded two such conversations in which Hasan repeatedly refused to return Muzammil and demanded that Dr. Taqueer drop her Family Court petition.

Because Hasan refused to attend the proceedings in Family Court, that court entered a default judgment against him. In July 2006, the Family Court issued an order granting Dr. Taqueer custody of Muzammil and issued a warrant for Hasan's arrest.

Finally, on October 28, 2006, Hasan was arrested in Detroit, Michigan, after he arrived on a

5

flight from India.  Hasan was traveling with Muzammil, who was soon reunited with Dr. Taqueer.

Hasan was then tried in the District Court.  On November 7, 2007, the jury returned a verdict of guilty on all three counts of the indictment.  The District Court then imposed a sentence principally of fifty-two months' imprisonment.  Hasan now appeals.

## DISCUSSION

On appeal, Hasan argues that (1) the evidence was insufficient to convict him; (2) the sentence imposed was unreasonable; and (3) he received ineffective assistance of counsel.  He further contends—albeit in a cursory manner—that he did not have the intent to commit these crimes.  We address each argument in turn.

### A.      Sufficiency of the Evidence

First, Hasan argues that the evidence presented at trial was insufficient to support the jury's guilty verdicts.  Specifically, he argues that the evidence was insufficient to conclude, as the jury apparently did, that Dr. Taqueer did not give her permission for Hasan's parents to take Muzammil to India.  He further contends that misstating a mailing address on a passport application is not sufficiently material to establish guilt of the offense of making a false statement on a passport application.

 Because "the task of choosing among competing, permissible inferences is for the [jury and] not for the reviewing court," *United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001), we are required to review the evidence "in the light most favorable to the government," *United States v. Gaskin*, 364 F.3d 438, 459 (2d Cir. 2004), and "resolve all issues of credibility in favor of the jury's verdict," *United States v. Desena*, 287 F.3d 170, 177 (2d Cir. 2002) (internal quotation marks omitted). *See generally Jackson*, 443 U.S. at 318-19.

6

At trial, the government introduced much evidence that Dr. Taqueer had not given permission to Hasan's parents to take Muzammil to India. First, Dr. Taqueer testified that she did not give her consent to Hasan's parents. Furthermore, several emails were admitted into evidence that were written by Hasan and demonstrated that Hasan knew that Dr. Taqueer had filed a petition in Family Court, knew that Dr. Taqueer desired the return of Muzammil, and had control over Muzammil's whereabouts. Hasan did testify that he had Dr. Taqueer's consent to allow his parents to take Muzammil to India, but we "resolve all is issues of credibility in favor of the jury's verdict," *Desena*, 287 F.3d at 177, and thus we conclude that the jury found Dr. Taqueer's testimony, and not Hasan's testimony, credible.

The government also presented other evidence at trial that supports Hasan's conviction. The evidence, for example, that Hasan signed the first two pages of Muzammil's passport application—the pages that contained the false address—several days after Dr. Taqueer signed the third page of the application undermines Hasan's claim that they filled out the pages together. Similarly, evidence presented at trial that Hasan purchased a one-way ticket to India undermines Hasan's claim that he had only planned a brief trip to India in July 2006 to retrieve Muzammil. Perhaps most importantly, the recorded telephone conversations between Hasan and Dr. Taqueer contradict Hasan's statement that he continually made valiant efforts to return Muzammil to Dr. Taqueer. Taken together, along with other evidence presented at trial, we conclude that there was sufficient evidence at trial to establish that Hasan intended to, and did, commit the kidnapping crimes and thus to support the jury's guilty verdicts. For this reason, we affirm the judgment of the District Court with respect to the convictions for international parental kidnapping and conspiracy to commit kidnapping.

Next, Hasan argues that the evidence was insufficient to support the jury's guilty verdict on the charge of making false statements on a passport application. Specifically, Hasan argues that his use of the incorrect address on Muzammil's passport application cannot support his conviction of this charge because it was not a material misstatement. Whether the statute prohibiting making false statements on a passport application, 18 U.S.C. § 1542, contains a materiality requirement is a question of first impression in this Circuit.

When construing a federal statute, we begin with the text of that statute. *See, e.g.*, *United States v. Kozeny*, 541 F.3d 166, 171 (2d Cir. 2008) (quoting *United States v. Albertini*, 472 U.S. 675, 680 (1985)). "Where the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Id.* (internal quotation marks omitted) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)).

Beginning with the text of 18 U.S.C. § 1542, we conclude that the statute plainly does not require that the false statement be material. *See* note 1 *ante* (text of statute). Unlike other statutes involving false statements, § 1542 does not contain a materiality requirement. For example, 18 U.S.C. § 1001 prohibits the making of "any *materially* false, fictitious, or fraudulent statement or representation" in any matter within the jurisdiction of the federal government. 18 U.S.C. § 1001 (emphasis added). The fact that a defendant knowingly and willfully made a false statement on the passport application is sufficient to sustain a conviction. Although we have not directly addressed this question before, each of our sister Circuits that has considered this question has agreed with our conclusion that § 1542 does not require that the alleged false statement be "materially false." *See United States v. Ramos*, 725 F.2d 1322, 1323 (11th Cir. 1984) (holding that, unlike § 1001, § 1542 does not have a materiality requirement); *see also United States v. Salinas*, 373 F.3d 161, 167 (1st Cir. 2004)

8

(same); *United States v. Hart*, 291 F.3d 1084, 1085 (9th Cir. 2002) (adopting the holding in *Ramos*, 725 F.2d at 1323).

Here, Hasan listed his brother's South Carolina address as Muzammil's residence, even though Muzammil's actual residence at the time was in Brooklyn. On appeal, Hasan only challenges that the evidence presented at trial was insufficient to establish materiality and does not dispute that the evidence was otherwise sufficient to establish that he knowingly made a false statement with the intent to obtain a passport. Because we conclude that § 1542 does not require proof of materiality, we affirm the judgment of the District Court on this count.

**B.      Reasonableness of Sentence**

On appeal, Hasan challenges three aspects of the District Court's guidelines calculation used in his sentencing. Specifically, he argues that the District Court erred procedurally in (1) imposing pursuant to United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines") § 2J1.2(b)(2) a three-level enhancement for substantial interference with the administration of justice; (2) imposing pursuant to U.S.S.G. § 3C1.1 a two-level enhancement for obstruction of justice; and (3) finding pursuant to U.S.S.G. § 3D1.2 that the passport fraud conviction should not be "grouped" with the kidnapping convictions.

Following *United States v. Booker*, 543 U.S. 220 (2005), a district court has broad latitude to "impose either a Guidelines sentence or a non-Guidelines sentence." *United States v. Sanchez*, 517 F.3d 651, 660 (2d Cir. 2008); *see also United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc). Accordingly, the role of the Court of Appeals is limited to examining a sentence for reasonableness, which is akin to review under an "abuse-of-discretion" standard. *See Cavera*, 550 F.3d at 190; *see also Gall v. United States*, 128 S. Ct. 586, 591 (2007) (holding that "courts of appeals

9

must review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard"); *cf. Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) ("A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." (internal alteration, citations, and quotation marks omitted)). This standard applies "both to the [substantive reasonableness of the] sentence itself and to the procedures employed in arriving at the sentence." *United States v. Verkhoglyad*, 516 F.3d 122, 127 (2d Cir. 2008) (internal quotation marks omitted).

When a defendant challenges the district court's *interpretation* of a Guidelines provision, we review this interpretation of the Guidelines—just as we would review the interpretation of any law—*de novo*. *See, e.g.*, *United States. v. Hertular*, 562 F.3d 433, 449 (2d Cir. 2009) ("In general, we review a district court's determination that a defendant deserves a[n] . . . enhancement . . . *de novo* . . . ."). *De novo* review of the interpretation of a Guidelines provision does not exceed the narrow appellate review prescribed by *Gall*. 128 S. Ct. at 591. Rather, *de novo* review of the law is adequately captured in the deferential "abuse-of-discretion" standard that *Gall* requires. *Id.* As the oft-cited case *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008), notes, "[a] district court has abused its discretion if it *based its ruling on an erroneous view of the law* or on a clearly erroneous assessment of the evidence or rendered a decision that cannot be located within the range of permissible decisions." (internal alteration, citations, and quotation marks omitted) (emphasis added). Put differently, a district court necessarily "abuses its discretion" if it makes an error of law. In this way, review for "abuse of discretion" and *de novo* review are not entirely distinct concepts, but rather, review for abuse of discretion incorporates, among other things, *de novo* review district court of rulings of law.

10

*See, e.g., United States v. Legros*, 529 F.3d 470, 473 (2d Cir. 2008) ("The abuse-of-discretion standard incorporates *de novo* review of questions of law (including interpretation of the Guidelines) and clear-error review of questions of fact.").

Further complicating and confusing the discussion of standards of review is that "abuse of discretion" is a misnomer in the review of a district court's rulings on matters of law. The interpretation of Guidelines provisions—or any law—is not "discretionary" in the ordinary sense of the word, *see* Webster's Third New International Dictionary 647 (1976) (defining "discretion" as "power of free decision or choice within certain legal bounds"), because, when there is a settled interpretation of a given law, judges do not exercise their "discretion" on whether or how to interpret or apply the law. Instead, they attempt in good faith to apply relevant precedential interpretations of that law. Nevertheless, the phrase "abuse of discretion"—a phrase that has been a source of some confusion and more than occasional (and understandable) irritation to district judges—has an expansive definition in the federal courts. *See Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 168 n.4 (2d Cir. 2001). This definition sweeps sufficiently far to define district court rulings that are based on erroneous conclusions of law as "abuses of discretion." *See, e.g., Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 405 (1990); *Sims*, 534 F.3d at 132; *Zervos*, 252 F.3d at 169. Understanding that appellate courts apply the term "abuse of discretion" to the overall review of a district court's implementation of a sentence and that the use of the term does not imply discretion on the part of the district judge in deciding a matter of law, we review the District Court's interpretation of the Guidelines here *de novo*. *See Belot v. Burge*, 490 F.3d 201, 206-07 (2d Cir. 2007); *see also Zervos*, 252 F.3d at 167-69 (explaining the differences among *de novo*, clear-error, and abuse-of-discretion review).

11

Hasan first challenges the three-level enhancement imposed by the District Court pursuant to U.S.S.G. § 2J1.2(b)(2) for interference with the administration of justice. Specifically, Hasan argues that this enhancement should not apply to him because he was never served with process from the Family Court and thus was not under the jurisdiction of that court.

In *United States v. Amer*, we concluded that this enhancement did apply to a set of nearly identical facts. 110 F.3d 873 (2d Cir. 1997). The defendant in *Amer* abducted his children and took them abroad without their mother's knowledge, as Hasan did here. In *Amer*, the mother then filed a petition in Family Court in New York, which awarded her full custody of the children and issued a warrant for the defendant's arrest—again, as Dr. Taqueer did in this case. Finally, the defendant in *Amer* was eventually arrested and convicted of international parental kidnapping, as Hasan was. We upheld the District Court's imposition of this three-level enhancement, reasoning that the defendant's abduction of the children "prevented proper legal proceedings from occurring by taking matters completely outside the purview of the administration of justice." *Id.* at 885. We conclude that our holding in *Amer* controls and thus that the District Court did not err in imposing this enhancement.

Next, Hasan argues that the District Court erred in applying, pursuant to U.S.S.G. § 3C1.1, a two-level enhancement for obstruction of justice by committing perjury at trial. Specifically, he argues that this enhancement punishes him for testifying at trial. This enhancement, however, "does not violate a defendant's constitutional right[] [to testify in one's own defense] if the defendant has made sworn statements that he knows to be false." *United States v. Johnson*, 994 F.2d 980, 988 (2d Cir. 1993). Hasan further argues that the enhancement should only be imposed after a jury finds that he did obstruct justice. Because the Guidelines are no longer mandatory, "the defendant has no

12

right to a jury determination of the facts that the judge deems relevant" when the trial judge selects a sentence within a defined range. *Booker*, 543 U.S. at 233. The District Court selected a specific sentence from within the well-defined range applicable under the Guidelines, thus Hasan was not entitled to a separate jury determination regarding his alleged perjury charge before the Court could apply this enhancement.

Finally, Hasan argues that the District Court erred in "grouping" the convictions for kidnapping and conspiracy to commit kidnapping, but not the conviction for passport fraud, because, in Hasan's view, all three charges arose from a common scheme as part of "a single criminal episode" pursuant to U.S.S.G. § 3D1.2 application note 3. Convictions are grouped, for Guidelines purposes, only when they involve the same victim. *See* U.S.S.G. § 3D1.2(a)-(b). Here, the victims of the kidnapping and conspiracy to kidnap were the same—namely, Dr. Taqueer and Muzammil. Society at large, however, was the victim of Hasan's passport fraud. For this reason, we conclude that the District Court did not err in grouping the kidnapping charges, but considering separately the passport fraud charge.

## C.     Ineffective Assistance of Counsel

Finally, Hasan argues that he received ineffective assistance of counsel. Specifically, Hasan contends that counsel was ineffective in failing to call certain family members to testify about the events in South Carolina and India; in failing to subpoena witnesses related to the passport application; in failing to call a family friend to testify against Dr. Taqueer; in failing to obtain Dr. Taqueer's telephone, bank, and employment records; in failing to raise certain objections to trial testimony; in failing to secure expert testimony concerning the alteration of telephone recordings and written documents; in failing to clarify certain facts during his summation; in failing to request a

13

speedy trial for Hasan; in failing to permit Hasan to participate in various meetings; in failing to inform Hasan of the strategic implications of pleading guilty as compared to those of pleading not guilty; in failing to file a Rule 29 motion; and in failing to inform Hasan of how the Guidelines operate and the effect of pleading not guilty on the Guidelines calculations.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), petitioner "must (1) demonstrate that his counsel's performance fell below an objective standard of reasonableness . . . and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) (internal quotation marks omitted). Although we prefer to address claims of ineffective assistance of counsel in collateral proceedings, rather than on direct appeal, we may take one of three actions when presented with a claim of ineffective assistance of counsel on direct appeal: "(1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent [28 U.S.C.] § 2255 petition; (2) remand the claim to the district court for necessary fact-finding; or (3) decide the claim on the record before us." *United States v. Leone*, 215 F.3d 253, 256 (2d Cir. 2000). When the resolution of the claims "is beyond any doubt or to do so would be in the interest of justice," we may choose to entertain these claims on direct appeal. *United States v. Matos*, 905 F.2d 30, 32 (2d Cir. 1990) (internal quotation marks omitted).

In this case, we are able to consider some of the claims of ineffective assistance of counsel because the record is clear, and Hasan's claims are clearly contradicted by the record. First, Hasan alleges that his attorney failed to permit his father, brother, and sister to testify regarding the events in South Carolina and India. Hasan's counsel did, however, subpoena his father and brother, who then did not testify after being advised by independent counsel of their right not to testify if that

14

testimony might incriminate themselves. With respect to Hasan's sister, we note that the record makes little mention of her, and nothing in the record would support relief on this basis. Next, Hasan argues that his counsel failed to object to the introduction at trial of certain inflammatory remarks that Hasan made. The record, however, indicates that Hasan's counsel did object. Hasan's claim that his trial counsel did not file a timely motion pursuant to Rule 29 of the Federal Rules of Criminal Procedure is also contradicted by the record. Hasan also claims that counsel failed to object to the introduction of evidence regarding the procedures to obtain passports in India and the United States. Although it is unclear what, exactly, Hasan challenges here, it is clear that, given the overwhelming evidence against him at trial, Hasan cannot show prejudice from the introduction of this evidence. Accordingly, we conclude that the above claims of ineffective assistance of counsel are without merit.

The record on appeal is insufficient to adjudicate Hasan's remaining claims of ineffective assistance of counsel—namely, Hasan's claims that his counsel failed to subpoena witnesses related to the passport application; failed to call a family friend to testify against Dr. Taqueer; failed to obtain Dr. Taqueer's telephone, bank, and employment records; failed to secure expert testimony concerning the alteration of telephone recordings and written documents; failed to clarify certain facts during his summation; failed to request a speedy trial for defendant; failed to permit appellant to participate in various meetings; failed to inform Hasan of the strategic implications of pleading guilty as compared to those of pleading not guilty; and failed to inform Hasan of how the Guidelines operate and the effect of pleading not guilty on the Guidelines calculations   We therefore decline to hear these claims and permit defendant to raise these issues as part of a subsequent petition under 28 U.S.C. § 2255. *See United States v. Oladimeji*, 463 F.3d 152, 154 (2d Cir. 2006) ("Where the record

15

on appeal does not include facts necessary to adjudicate a claim of ineffective assistance of counsel, our usual practice it not to consider the claim on direct appeal, but to leave it to the defendant to raise the claims on a petition for habeas corpus under 28 U.S.C. § 2255.").

**CONCLUSION**

To summarize:

(1) We conclude that the evidence was sufficient to support defendant's convictions for international parental kidnapping and conspiracy to commit kidnapping;

(2) We conclude that, under 18 U.S.C. § 1542, conviction of the crime of making a false statement on a passport application does not require that the statement be materially false, and thus we conclude that the evidence was sufficient to support defendant's conviction on this count;

(3) We conclude that the District Court did not err in sentencing defendant;

(4) We dismiss several of defendant's claims of ineffective assistance of counsel; and

(5) We decline to review defendant's remaining claims of ineffective assistance of counsel on direct appeal—namely, defendant's claims that his counsel failed to subpoena witnesses related to the passport application; failed to call a family friend to testify against Dr. Taqueer; failed to obtain Dr. Taqueer's telephone, bank, and employment records; failed to secure expert testimony concerning the alteration of telephone recordings and written documents; failed to clarify certain facts during his summation; failed to request a speedy trial for defendant; failed to permit appellant to participate in various meetings; failed to inform Hasan of the strategic implications of pleading guilty as compared to those of pleading not guilty; and failed to inform Hasan of how the Guidelines operate and the effect of pleading not guilty on the Guidelines calculations—all of which may be the subject, in due course, of a proceeding under 28 U.S.C. § 2255.

16

Accordingly, the October 3, 2008 judgment of the District Court is **AFFIRMED**.