10-1192-cr
*United States v. MacCaull*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 16th day of June, two thousand eleven.

PRESENT:    JON O. NEWMAN,
                   JOSEPH M. McLAUGHLIN,
                   DEBRA ANN LIVINGSTON,
                                      *Circuit Judges.*

---

UNITED STATES OF AMERICA,
            *Appellee*,

-v.-                                                    No. 10-1192-cr

BRADLEY DAVID EISNER,

            *Defendant*,

MICHAEL RICHARD MACCAULL,
            *Defendant-Appellant*.

---

MARK C. FANG, Esq., White Plains, NY, *for Defendant-Appellant*.

PAUL TUCHMANN, Assistant United States Attorney (Susan Corkery and Sarah Coyne, Assistant United States Attorneys, *on the brief*), *for* Loretta E. Lynch, United States Attorney, Eastern District of New York, Brooklyn, NY, *for Appellee*.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be **AFFIRMED**.

Defendant-Appellant Michael Richard MacCaull ("MacCaull") appeals from a judgment of the United States District Court for the Eastern District of New York (Irizarry, *J.*), entered March 30, 2010, convicting him, pursuant to a plea agreement, of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1349, sentencing him to 188 months' incarceration and a 3-year term of supervised release, and ordering him to pay restitution for the fraud in the amount of $66,254,694.60. MacCaull appeals from the sentence imposed by the district court on both procedural and substantive grounds. We assume the parties' familiarity with the underlying facts, procedural history of the case, and issues on appeal.

In an appeal from a sentence imposed by the district court, " the role of the Court of Appeals is limited to examining a sentence for reasonableness, which is akin to review under an 'abuse-of-discretion' standard." *United States v. Hasan*, 586 F.3d 161, 167 (2d Cir. 2009). We apply this deferential standard "both to the [substantive reasonableness of the] sentence itself and to the procedures employed in arriving at the sentence." *Id.* at 168 (alteration in original) (quoting *United States v. Verkhoglyad*, 516 F.3d 122, 127 (2d Cir. 2008)). We seek first to "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range." *United States v. Dorvee*, 616 F.3d 174, 179 (2d Cir. 2010) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). When no such procedural error has occurred, "substantive reasonableness

reduces to a single question: 'whether the District Judge abused his discretion in determining that the § 3553(a) factors supported' the sentence imposed." *United States v. Jones*, 531 F.3d 163, 170 (2d Cir. 2008) (quoting *Gall*, 552 U.S. at 56). In conducting this inquiry, "we will not substitute our own judgment for the district court's," *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc), and will set aside its decision only when it "cannot be located within the range of permissible decisions," *id.* (quoting *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007)).

MacCaull asserts on appeal that the district court committed procedural error in determining his Guidelines range calculation on the basis of actions committed by his co-defendant, Bradley David Eisner ("Eisner"), without first making a required particularized finding as to whether that criminal activity was within the scope of the conspiracy in which MacCaull had agreed to participate. *See United States v. Studley*, 47 F.3d 569, 574 (2d Cir. 1995). As a preliminary matter, the government argues that we may review this issue only for plain error. We agree. MacCaull asserts that he sufficiently raised this objection with two passing references during sentencing that implied he erroneously believed he knew "the size and the scope" of his conspiracy to engage in a Ponzi scheme with Eisner. However, it is clear in the context of the hearing that those references were directed not at the district court's supposed failure to make a finding as to the scope of the conspiracy in which he had agreed to engage, but at whether the extent of the losses caused by MacCaull's and Eisner's fraud were foreseeable to MacCaull, which was the primary objection MacCaull raised at sentencing to his being held liable for the full amount of the harm caused by the Ponzi scheme. Thus, to prevail on this claim, MacCaull must show "(1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the

3

fairness, integrity, or public reputation of judicial proceedings." *United States v. Paul*, 634 F.3d 668, 674 (2d Cir. 2011) (alterations in original) (quoting *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)).

Proceeding to the merits of MacCaull's procedural claim, we note that under U.S.S.G. § 1B1.3 the relevant conduct on the basis of which the district court is to determine a defendant's Guidelines range for a particular offense includes:

> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a)(1). An Application Note for this section of the Guidelines then provides that "[i]n order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement)." *Id.* § 1B1.3, Application Note 2. Thus, in order for a defendant to be held accountable for the acts of a co-conspirator, "this Court requires a district court to make two particularized findings[:] . . . '1) that the acts were within the scope of the defendant's agreement and 2) that they were foreseeable to the defendant.' " *United States v. Johnson*, 378 F.3d 230, 238 (2d Cir. 2004) (quoting *Studley*, 47 F.3d at 574).

Here, despite MacCaull's contention on appeal, the district court did make the required finding that the "scope of the defendant's agreement" extended to the whole of the Ponzi scheme

he devised and executed with Eisner. As an initial matter, this case is already distinct from *Studley* and many of the other cases on which MacCaull relies in that, rather than claiming that the Razor FX operation was not "jointly undertaken criminal activity," MacCaull *admitted* during the sentencing proceeding that he "started Razor FX" with Eisner and made a "conscious decision" to turn it into a Ponzi scheme.[1] He acknowledged that he and Eisner "stole [the victims'] money and lied to them about it for seven years, by using fraudulent statements, fake confirmations, bogus predictions and outright lies" and challenged only whether the full extent of the losses was foreseeable to him.

While many of the findings made by Judge Izirarry below were thus directed at the degree to which the losses caused by his Ponzi scheme were foreseeable (a byproduct of the focus of MacCaull's argument at sentencing), her discussion was predicated on her finding that, in operating the fraudulent scheme, MacCaull and Eisner "were in business together." Speaking of MacCaull's family and friends in the courthouse, she noted that none of them was "sitting with Mr. Eisner or with Mr. MacCaull when they were hatching their plot to create Razor FX and were hatching their plans to continue with really what was a massive fraud here in terms of the number of victims and the amount of money that spanned over a period of eight years." The judge noted that MacCaull's "knowhow of the industry" was crucial to the development of the scheme and that he had been a necessary part of "get[ting] this business off the ground." Having concluded that the "scope of the defendant's agreement" included the whole of the Razor FX scheme that he hatched with Eisner, the district court further found that, even while MacCaull was incarcerated, he "g[ave Eisner] tips

---

[1] This account was in dispute at sentencing only to the extent that the district court noted that the government's proof suggested that the Razor FX operation had been a Ponzi scheme from the outset.

5

on how to conduct the business, what to do, and [he] still did that while [he was] out." While MacCaull suggests to this Court that the money taken in by Eisner and allegedly hidden from him in 2007 can be analogized to a "side deal" distinct from the pair's Ponzi scheme, the district court rejected this speculative account of Eisner's actions, noting that, to the extent MacCaull profited less during this period, it was not because he was unable to profit more as he remained "critical to the operation." At the same time, the district court also rejected MacCaull's argument at sentencing that the extent of the losses caused was not reasonably foreseeable, an argument he abandons on appeal.

While MacCaull notes that courts have distinguished between the scope of a defendant's knowledge and the scope of his or her agreement to, or participation in, a conspiracy, the district court here found not simply that MacCaull knew the extent of the losses caused by his and Eisner's scheme but also that he created the Ponzi scheme in question with Eisner, was instrumental in its initial development, and continued to participate in and profit from the scheme throughout the time in which it was in existence. Particularly in light of the fact that here MacCaull had already acknowledged in his plea allocution that "[f]rom approximately January 2001 to January 2008, [he] agreed with another individual to devise a scheme to defraud investors in Razor FX" and failed subsequently to raise a challenge at sentencing to the conclusion that the actions of the Razor FX Ponzi scheme were thus clearly within the scope of his agreement, we see no plain error in the degree of particularity with which the district court set out its finding that the subsequent fraudulent activity was within the scope of MacCaull's agreement.

MacCaull also challenges the substantive reasonableness of his sentence. In particular, he asserts that the district court "failed to properly assess" both the findings by the probation department regarding its recommendation that he be given a minor role adjustment and his claims

6

regarding the allegedly diminished role he played in the later years of the conspiracy. However, not only did the district court spend a significant amount of time discussing the contention that MacCaull may not have made use of the Ponzi scheme's funds to the same extent Eisner did, it in fact granted him the minor role adjustment recommended in his Pre-Sentence Report. Moreover, the district court also addressed and rejected his claim that he was unaware of the fraudulent activities being undertaken in the later years of the conspiracy and simply refused to give him a lesser sentence based on the allegedly smaller role he played during this period in light of this conclusion. It is clear here that the district court fully considered the "nature and circumstances" of MacCaull's offense, 18 U.S.C. § 3553(a)(1), and we perceive no abuse of discretion in the sentence it imposed following this consideration.

MacCaull's second substantive challenge asserts that his sentence was unreasonable "in light of Eisner's non-jail sentence and the disparate treatment the court displayed at the two sentencing hearings." This Court has recognized that district courts, while not barred from considering sentencing disparities among co-defendants, are also not required to consider any such disparities under 18 U.S.C. § 3553(a)(6). *See United States v. Wills*, 476 F.3d 103, 110 (2d Cir. 2007), *abrogation on other grounds recognized by United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008) (en banc). Moreover, as the government notes, even though the district court was under no obligation to consider any such disparity between MacCaull and Eisner, the co-defendants here cannot in any case be termed similarly situated in light of the substantial assistance Eisner provided to the government in the investigation and the subsequent conviction of MacCaull, a distinction the district court recognized in sentencing Eisner. While MacCaull asserts that his sentence was made to serve as deterrence for both his and Eisner's crime, it is clear that the district court in Eisner's

7

proceeding was simply recognizing that, given MacCaull's conviction and sentence, it could take into account the assistance provided by Eisner and encourage people to confess their wrongdoing without suggesting that serious offenses such as the fraud at issue here would go unpunished. We simply cannot conclude on this basis that the sentence imposed on MacCaull was substantively unreasonable.

We have considered all of Appellant's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8