10-2186-cr
United States v. Simpson

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 28th day of October, two thousand eleven.

PRESENT:

ROGER J. MINER,
JOSÉ A. CABRANES,
DEBRA ANN LIVINGSTON,

*Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

*Appellee,*

v.                                                                    No. 10-2186-cr

DAVID SIMPSON,

*Defendant-Appellant.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**FOR DEFENDANT-APPELLANT:**       BEVERLY VAN NESS, New York, NY.

**FOR APPELLEE:**                          STEPHEN J. MEYER, Assistant United States
                                                      Attorney (Loretta E. Lynch, United States

Attorney for the Eastern District of New York, *on the brief*, Emily Berger and Shreve Ariail, Assistant United States Attorneys, *of counsel*), Office of the United States Attorney for the Eastern District of New York, Brooklyn, NY.

Appeal from a judgment of conviction and sentence entered on March 25, 2010, in the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., *Judge*).

**UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Defendant-appellant David Z. Simpson ("Simpson") challenges his conviction by a jury on four counts of drug importation and distribution, claiming that his right to the effective assistance of counsel was violated by his attorney's failure to impeach a government witness. Simpson also challenges his sentence on grounds of procedural and substantive unreasonableness.

**Background**

Simpson was arrested on December 18, 2007, at John F. Kennedy International Airport ("JFK"). Earlier that day, a Border Patrol Officer had arrested a co-conspirator, Linette Santana, upon her arrival from Trinidad carrying a suitcase with a false bottom containing a white, powdery substance.[1] Santana agreed to participate in a controlled delivery and was sent back out to the lobby, where Simpson approached her. The two were observed speaking to one another and making calls on their cellular phones before heading to the parking lot, where they were arrested as they placed the suitcase into the trunk of a silver sedan belonging to Simpson's wife. Upon arrest, Simpson was immediately taken for questioning.[2] As agent Christopher Lau later testified at trial, Simpson said that he had come to the airport to pick up Santana as a favor for a friend, called "Q," and that he had brought Santana to the airport the previous week at Q's request. In addition, Lau testified, Simpson stated that "Ms. Santana had inquired if she was to be paid and he [Simpson] indicated she would be pa[i]d in a couple of days." Trial Transcript 245.

---

[1] Although an initial field test indicated the presence of cocaine, the substance was later determined to be lidocaine, a substance which is often used as a "cutting" agent in the distribution of narcotics.

[2] Before speaking, Simpson signed a waiver of his *Miranda* rights.

2

In addition to Lau, the government's trial witnesses included Michelle Yearwood, a cooperating witness and co-conspirator who had pleaded guilty to an importation charge after being arrested at JFK in September 2007 with a suitcase containing 2.779 kilograms of cocaine. Yearwood testified that she had worked as a courier for Simpson, carrying cash into the United States from Trinidad. She testified that she had spoken to Simpson on the phone on numerous occasions and that he had freely discussed his involvement in the importation of drugs from Trinidad. Further, she testified that, on one occasion, she personally observed Simpson and another co-conspirator extract from a suitcase several packages of a "white substance," which she presumed to be cocaine, and empty them into two gallon-sized zip-lock bags. Additional evidence presented by the government included scraps of paper found in Simpson's pocket that contained the phone numbers of other co-conspirators, parking records from JFK showing that the car registered to Simpson's wife had entered and left the JFK parking lot 18 times in the six months prior to his arrest, and phone records showing numerous calls to and from Yearwood.

Simpson was convicted on all counts. At sentencing, the government asserted that the Guidelines range for his offenses was 135–168 months, based on Simpson's criminal history category of I, a base offense level of 30 (resulting from its calculation that Simpson's conduct involved at least 3.5 kilograms of cocaine), and a three-level enhancement for Simpson's role as a manager or supervisor of criminal activity involving five or more persons. Simpson argued for a non-Guidelines sentence of 60 months, the statutory minimum. He claimed that the government could tie him to only 2.779 kilograms of cocaine, less than the 3.5 kilograms necessary to raise the offense level from 28 to 30, and that no enhancement for his role should apply. The District Court concluded that the government had shown that Simpson's conduct involved at least 3.5 kilograms of cocaine, but that it had not shown that Simpson was a manager of criminal activity involving five or more persons. Accordingly, it calculated a Guidelines range of 121–151 months, based on an offense level of 30 and a two-level role enhancement. It then imposed a mid-Guidelines sentence of 135 months, to run concurrently on all counts.

We assume the parties' familiarity with the remaining factual and procedural background of the case.

**Ineffective Assistance of Counsel at Trial**

Simpson contends that he was denied the effective assistance of counsel when his attorney failed to challenge Lau's testimony regarding his post-arrest statements. Though Lau testified that Simpson had told him that he assured Santana that she would be paid "in a couple of days," Lau's typed interview notes conceivably could be read to indicate that Simpson, upon Santana's inquiry about payment, phoned Q and only then relayed Q's answer to Santana. This, Simpson contends, would fit with the defense theory that he had arrived innocently to collect Santana at Q's request and

that he did not know that she was involved in drug trafficking. He argues that his trial counsel's failure to impeach Lau with his contemporaneous notes was objectively unreasonable and prejudicial.

To prevail on a claim of ineffective assistance of counsel, a defendant must establish both (1) that defense counsel's actions or omissions fell below an objective standard of reasonableness and (2) that there exists a reasonable probability that but for counsel's deficiency, the result of his case would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). Although we have often expressed a "'baseline aversion to resolving ineffectiveness claims on direct review,'" *United States v. Morris*, 350 F.3d 32, 39 (2d Cir. 2003) (quoting *United States v. Salameh*, 152 F.3d 88, 161 (2d Cir. 1998)), we agree with both parties that Simpson's ineffectiveness claim can be resolved in the present appeal, because the record leaves us with no doubt as to the proper disposition of the claim. *See United States v. Cruz*, 785 F.2d 399, 404 (2d Cir. 1986) (reviewing an ineffectiveness claim on direct appeal because "we are convinced that resolution of the issue is 'beyond any doubt'" (quoting *Singleton v. Wulff*, 428 U.S. 106, 121 (1976))); *see also United States v. Hasan*, 586 F.3d 161, 170 (2d Cir. 2009) ("When the resolution of the claims is beyond any doubt or to do so would be in the interest of justice, we may choose to entertain these claims on direct appeal." (internal quotation marks omitted)).

Whether Simpson's trial counsel's performance fell below an objective standard of reasonableness is a question that likely would require a more complete record to address. It is difficult to discern on direct appeal whether there might have been a strategic reason for counsel's failure to cross-examine Lau with respect to Simpson's post-arrest statements. We need not reach that question, however, because Simpson clearly has failed to make a sufficient showing on the prejudice prong of the *Strickland* test. *See Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

Even if Simpson's trial counsel was deficient in failing to impeach Lau by bringing out apparent inconsistencies between Lau's trial testimony and his contemporaneous interview notes, we conclude that this deficiency did not prejudice Simpson, given the strength of the government's case against him. Simpson's counsel could have rendered Lau's testimony impotent with a peerless cross-examination, and the jury still would have been left with the government's other evidence, which was overwhelming. In particular, any inconsistency in Lau's testimony would have had little or no impact on the damning testimony of Simpson's co-conspirator, Yearwood, who testified that Simpson had been her primary contact in the conspiracy, that it was at Simpson's direction that she attempted to import 2.779 kilograms of cocaine into the United States on the day of her arrest, that Simpson spoke freely with her about his drug-trafficking activities, and that she personally had

4

observed Simpson handling a package of white powder that had been delivered to him by another courier. Although it is true that Yearwood was a cooperating witness and subject to impeachment in her own right, we have no reason to believe that her testimony would have been any less credible in the absence of the purported deficiency of trial counsel. Furthermore, Yearwood's testimony was corroborated by other evidence submitted by the government, including parking receipts for 18 trips to JFK and phone records and hand-written notes linking Simpson to other co-conspirators. Given this overwhelming evidence against him, we conclude that Simpson cannot satisfy the prejudice prong of the *Strickland* inquiry.

## Procedural Unreasonableness in Sentencing

Simpson argues that his sentence was procedurally unreasonable because the District Court improperly calculated the quantity of cocaine attributable to Simpson's conduct and failed to provide an adequate explanation for the sentence imposed.

We review the reasonableness of a district court's sentencing determinations under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). In *United States v. Cavera*, we identified the recognized forms of procedural error:

> A district court commits procedural error where it fails to calculate the Guidelines range (unless omission of the calculation is justified), makes a mistake in its Guidelines calculation, or treats the Guidelines as mandatory. It also errs procedurally if it does not consider the § 3553(a) factors, or rests its sentence on a clearly erroneous finding of fact. Moreover, a district court errs if it fails adequately to explain its chosen sentence, and must include an explanation for any deviation from the Guidelines range.

550 F.3d 180, 190 (2d Cir. 2008) (*en banc*) (internal quotation marks and citations omitted). We do not find any such error in this case.

First, the District Court did not clearly err in calculating the quantity of cocaine attributable to Simpson's conduct. The Sentencing Guidelines instruct that "[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." U.S.S.G. § 2D1.1(a) application note 12. The District Court must find that the government has proved the amount attributable to the defendant by a preponderance of the evidence. *United States v. Colon*, 961 F.2d 41, 43 (2d Cir. 1992).

5

Here, there was ample evidence to support the District Court's finding that the amount of cocaine attributable to Simpson's conduct was 3.5 kilograms or more. Yearwood, the cooperating witness, was arrested with 2.779 kilograms of cocaine during a delivery organized by Simpson. At trial she testified that she separately had seen Simpson handle enough cocaine to fill a one-gallon zip-lock bag. Corroborating evidence showed generally that Simpson had participated in a large-scale drug conspiracy and suggested that he personally had participated in multiple deliveries, based on his trips to JFK and corresponding cell phone calls to known drug couriers.

Simpson's primary argument is that the "white substance" that Yearwood saw Simpson handle was not proven definitively to be cocaine. Though true, this objection is without merit, inasmuch as the government need only prove the amount attributable to Simpson by a preponderance of the evidence. We conclude that the evidence was more than sufficient to support the District Court's quantity calculation.

Second, we conclude that the District Court did not fail to explain adequately the basis of its sentence. A sentencing court is required to "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c) (2006). The primary interest served by this requirement is "to ensure that district courts actually consider the statutory factors and reach reasoned decisions." *Cavera*, 550 F.3d at 193. "[W]e presume in the absence of record evidence suggesting otherwise, that a sentencing judge has faithfully discharged her duty to consider the statutory factors." *United States v. Fernandez*, 443 F.3d 19, 30 (2d Cir. 2006).

Nothing in the record suggests that the District Court failed to discharge its duty in this case. Although the District Court's articulation of the reasons for its sentence was somewhat cursory, we have stated that "a brief statement of reasons will generally suffice where the parties have addressed only 'straightforward, conceptually simple arguments' to the sentencing judge." *Cavera*, 550 F.3d at 193 (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)). Furthermore, because the sentence imposed was comfortably within the Guidelines range, it was not necessary for the District Court to "offer a lengthy explanation." *United States v. Villafuerte*, 502 F.3d 204, 210 (2d Cir. 2007). The District Court addressed the parties' competing arguments regarding the quantity of cocaine attributable to Simpson's conduct as well as his role in the offense (siding with the government on the former issue and partially with Simpson on the latter), and concluded that a sentence of 135 months was necessary "[t]o reflect the seriousness of the offense, afford deterrence to criminal conduct and protect the public from future crimes of this defendant." Statement of Reasons IV.B, *United States v. Simpson*, No. 08-CR-0030-SJ-02 (E.D.N.Y. May 7, 2010). Under the circumstances of the case, we find this to be sufficient.

**Substantive Unreasonableness in Sentencing**

Finally, Simpson argues that his sentence of 135 months, despite being at the middle of the Guidelines range, was substantively unreasonable. Although we do not presume a sentence within the Guidelines range to be reasonable, we have recognized "that in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *Fernandez*, 443 F.3d at 27. Simpson has provided us with no basis for concluding that the Guidelines sentence imposed by the District Court falls outside the broad range of reasonable sentences.

## CONCLUSION

We have considered all of Simpson's arguments on appeal and find them to be without merit. For the reasons stated above, we **AFFIRM** the judgment and sentence of the District Court.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court

7