REVISED January 8, 2010

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 6, 2010

Charles R. Fulbruge III
Clerk

No. 08-50913

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

SILVIA NAJERA JIMENEZ, also known as Silvia Najera Ruiz,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before KING, GARZA and HAYNES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Appellant Silvia Najera Jimenez was convicted of making a false statement in a passport application, in violation of 18 U.S.C. § 1542, and making a false statement to a special agent of the Department of State Diplomatic Security Service, in violation of 18 U.S.C. § 1001(a)(2). She appeals on two grounds: (1) that there was insufficient evidence to support the conviction as to both counts; and (2) that the district court erred in excluding defense evidence with the cumulative effect of those exclusions resulting in the denial of her Sixth Amendment right to present a defense.

I

Silvia Najera Jimenez, also known as Silvia Najera Ruiz (hereinafter "Jimenez"), applied for a U.S. passport in 1991. In her passport application, Jimenez represented that she was born in El Paso, Texas on January 12, 1949. Documentation submitted with the 1991 application included a court-ordered delayed birth certificate and a Texas identification card. The United States Department of State ("State Department") sent two pieces of correspondence to Jimenez in 1992 regarding her application. The first letter requested that Jimenez provide additional documentation to prove her birth in the United States. The second letter requested that Jimenez complete and submit a supplemental information form. In response, Jimenez provided a copy of a baptismal certificate from New Mexico and a completed and signed supplemental information form. The State Department did not issue Jimenez a passport and her file was retired. At some point after receiving this 1991 application, the State Department placed a fraud alert on Jimenez's file because, in addition to finding her information insufficient evidence of citizenship, it had located a Mexican birth registration indicating Jimenez's birth date was January 7, 1949.[1]

In April 2007, Jimenez applied for a U.S. passport for the second time. Her application again stated that she was born in El Paso on January 12, 1949 and attached her delayed birth certificate. The application included the question: "Have you ever applied for or been issued a U.S. passport?" Jimenez checked the "no" answer. Jimenez signed the application under penalty of perjury, attesting that the statements contained therein were true and correct.

---

[1] Jimenez was never notified of the fraud alert. Nor did the State Department send any further correspondence denying her application or otherwise notifying Jimenez that she would not receive a passport.

The State Department initiated an investigation because of the 1991 fraud alert on Jimenez's previous passport application. The purpose of the investigation was to determine whether Jimenez was eligible to receive a U.S. passport, and specifically to determine whether she was a U.S. citizen as she claimed. The State Department obtained the following records during the investigation: (1) a certified State of Chihuahua birth record, recorded in 1960, stating that Jimenez was born January 7, 1949 in Ciudad Juarez, Chihuahua, Mexico; (2) a certified State of Chihuahua birth record, recorded in 1968, stating that Jimenez was born January 7, 1949 in Ciudad Juarez, Chihuahua, Mexico; (3) a certified copy of an El Paso County, Texas marriage license for Jimenez, stating that she was born in Juarez, Mexico on January 7, 1949; (4) a certified State of Chihuahua birth record for Jimenez's oldest son, listing Jimenez's nationality as "Mexican;" (5) a certified State of Chihuahua birth record for Jimenez's second son, listing Jimenez's nationality as "Mexican;" and (6) a certified State of Chihuahua birth record for Jimenez's grandchild, listing Jimenez's nationality as "Mexican." The investigators also discovered that Jimenez used a Chihuahua driver's license (with a birth date of January 7, 1949) and Mexican voter registration card to establish the mailing address, a postal drop-box service, used for her passport application.

In January 2008, Richard Hays, a special agent with the State Department's Diplomatic Security Service and the lead investigator interviewed Jimenez at the permanent address listed in her 2007 passport application. Agent Hays testified that Jimenez seemed nervous. She was asked how she had entered the United States prior to 1991 and responded that she entered as a Mexican citizen at the international boundary. Agent Hays asked whether Jimenez had heard from or received correspondence from the State Department

regarding her 1991 passport application.[2] She responded "no." Agent Hays also asked Jimenez if she had contacted the State Department regarding her 1991 passport application and she again stated "no."

Jimenez was arrested and charged with violating 18 U.S.C. § 911 by falsely claiming to be a U.S. citizen (Count One); violating 18 U.S.C. § 1542 by falsely claiming to be a U.S. citizen on her passport application (Count Two); violating 18 U.S.C. § 1542 by falsely answering "no" to the question whether she had previously applied for a passport (Count Three); and violating 18 U.S.C. § 1001 by falsely telling Agent Hays that she had not received correspondence from the State Department in relation to her 1991 passport application (Count Four). Jimenez was tried by jury. She moved for acquittal at the close of the government's case in chief. The district court denied the motion. Jimenez presented her case including testimony of some, but not all, of the witnesses she wanted to call and her own testimony, although limited by certain evidentiary rulings. Jimenez renewed her motion for acquittal which was again denied. The jury found Jimenez not guilty as to Counts One and Two and guilty as to Counts Three and Four. Jimenez renewed her motion for acquittal. The district court denied the motion and sentenced Jimenez to a five-year term of probation on

---

[2] There is some confusion about exactly what was asked at the interview. Hays conducted the interview in Spanish, a language in which he was certified as proficient by the State Department. A translator was not present although Hays admitted on cross examination that he was "not a fluent Spanish speaker." The interview was not recorded. Hays's testimony as to the exact questions he asked Jimenez about the 1992 correspondence with the State Department is somewhat confusing. At one point he testified that he asked her whether she had heard from the State Department regarding her 1991 application and she stated she had not. On cross-examination, Agent Hays testified that he asked Jimenez whether she ever received "any type of word or explanation of why [she did not receive] the passport" and whether she made any "attempt to at least contact the State Department [to] find out a determination of why they did not send you a passport." These questions are materially different than the question whether Jimenez had any correspondence or "heard" from the State Department in any regard. Based on the record, "no" was the truthful response to questions about whether she received an explanation or final determination on the 1991 passport or whether she asked the State Department for a final determination. She did not. Indeed, Agent Hays admitted that "no" was the correct answer to these questions.

both counts, to run concurrently, a $10,000 fine, and a $200 special assessment. Jimenez timely appealed.

II

Our review of a sufficiency-of-the-evidence challenge is "highly deferential to the verdict." United States v. Elashyi, 554 F.3d 480, 491 (5th Cir. 2008) (internal quotations and citation omitted). "The court asks whether the evidence, when reviewed in the light most favorable to the government with all reasonable inferences and credibility choices made in support of a conviction, allows a rational fact finder to find every element of the offense beyond a reasonable doubt." Id. at 492 (internal quotations and citation omitted). The evidence need not "exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." United States v. Faulkner, 17 F.3d 745, 768 (5th Cir. 1994).

A

Jimenez challenges the sufficiency of the evidence to support her conviction on Count Three for violating 18 U.S.C. § 1542 by checking the "no" box on her passport application in response to the question whether she had "previously applied for or been issued a United States passport." Section 1542 provides, in relevant part, that it is a crime to:

> willfully and knowingly make any false statement in an application for a passport with intent to induce or secure the issuance of a passport under the authority of the United States . . . contrary to the law regulating the issuance of passports or the rules prescribed pursuant to such laws . . . .

18 U.S.C. § 1542. Jimenez contends that there is no evidence that she made the false statement for the purpose of causing the issuance of a passport contrary to law.[3] According to Jimenez, the language "contrary to the law regulating the

---

[3] Jimenez does not challenge the jury's finding that she willfully and knowingly made a false statement.

issuance of passports" must mean something and most logically means that there must be an illegal purpose to the false statement, that is, that her statements could have affected her passport application in such a way as to result in issuance contrary to law.[4]

This circuit has not previously addressed whether 18 U.S.C. § 1542 contains a materiality element, although other circuits have addressed the question. Most recently, the Second Circuit determined that by its plain terms, 18 U.S.C. § 1542 does not require that the false statement be material. United States v. Hasan, — F.3d —, 2009 WL 3737521 (2d Cir. Nov. 10, 2009). The handful of other circuits to consider the question have also found that materiality is not an element of a § 1542 violation. See, e.g., United States v. Salinas, 373 F.3d 161, 167 (1st Cir. 2004) (noting that § 1542 does not contain a materiality requirement such as that found in 18 U.S.C. § 1001); United States v. Hart, 291 F.3d 1084, 1085 (9th Cir. 2002) (finding no materiality requirement in § 1542); United States v. Ramos, 725 F.2d 1322, 1323 (11th Cir. 1984) (holding that materiality is not an element of § 1542 because "any false statement" is sufficient). To the extent that Jimenez is arguing that the words "contrary to law" mean "material," we disagree. Had Congress intended to require a "material" false statement, it would have said so directly rather than veil the

---

[4] The question whether the jury was properly charged was raised at oral argument. The original instructions proposed by the government as to Count Three, with which Jimenez agreed, required proof beyond a reasonable doubt that Jimenez: (1) "willfully and knowingly made a false statement in a passport application;" (2) "made the false statement with the intent to induce or secure the issuance of a United States passport; and" (3) "the defendant sought the passport for her own use contrary to the laws regulating the issuance of passports." (emphasis added). On the morning of closing arguments, the government moved to drop the third requirement from this instruction. Defense counsel noted a preference for the original instruction but did not formally object. The final jury charge did not require a proof that Jimenez sought the passport "contrary to the law." Accordingly, any error in dropping the "contrary to the laws" language would be reviewed for plain error. See United States v. Betancourt, – F.3d –, 2009 WL 3233532, at *2 (5th Cir. 2009). Because we find no materiality requirement, it follows there was no error in the instruction.

requirement in the language "contrary to the law regulating the issuance of passports." Compare 18 U.S.C. § 1542 (illegal to "willfully and knowingly make any false statement . . . with intent to induce or secure the issuance of a passport") with 18 U.S.C. § 1001 (illegal to make "any materially false, fictitious, or fraudulent statement or representation") (emphases added). We agree with our sister circuits: any false statement, knowingly and willfully made, suffices.

Nonetheless, Jimenez is correct that the words "contrary to law" must mean something. A natural understanding of the phrase in § 1542, "contrary to the law regulating the issuance of passports or the rules prescribed pursuant to such laws," is that if a passport were issued for an applicant that made any false statement on the application, that passport would be contrary to the laws and rules regulating passports. This is so because a passport applicant is required to swear an oath under penalty of perjury before the passport agency officer that, among other things, the statements in the application are true and correct and the applicant has not knowingly and willfully made any false statements. Any false statement would violate the laws and regulations requiring absolute truthfulness on the passport application and could result in issuance of a passport "contrary to the law regulating the issuance of passports."

The evidence here was sufficient to support Jimenez's conviction on Count Three. Jimenez admitted that she previously applied for a passport and that the "no" answer was untrue. She testified that she did not mean to answer incorrectly and was confused by the question. The jury was free to find the government's evidence more credible than Jimenez's testimony and could have reasonably inferred that this statement was made "knowingly and willfully" and with intent to secure a U.S. passport. This is all that § 1542 requires.

B

Jimenez also contends that there was insufficient evidence to support her conviction as to Count Four, for violating 18 U.S.C. § 1001(a)(2) by telling Agent

Hays that she did not receive correspondence from the State Department concerning her 1991 passport application. Section 1001(a)(2) provides that it is a crime to "knowingly and willfully . . . make[] any materially false, fictitious, or fraudulent statement or representation" to a government officer. Jimenez argues that the government failed to introduce any evidence that the statement she made to Agent Hays was material.

Proof of a violation of § 1001 consists of five elements: "(1) a statement, that is (2) false (3) and material, (4) made with the requisite specific intent, [and] (5) within the purview of government agency jurisdiction." United States v. Puente, 982 F.2d 156, 158 (5th Cir. 1993) (quoting United States v. Lichenstein, 610 F.2d 1272, 1276 (5th Cir. 1980)). Unlike § 1542, § 1001(a)(2) explicitly includes a materiality requirement. The "statements [must] be 'material' to the Government inquiry, and that 'materiality' is an element of the offense that the Government must prove." United States v. Gaudin, 515 U.S. 506, 509 (1995).

In Gaudin, the Supreme Court provided an analytical framework for determining the materiality of a statement and whether such a statement could influence a government decision:

> Deciding whether a statement is "material" requires the determination of at least two subsidiary questions of purely historical fact: (a) "what statement was made?" and (b) "what decision was the agency trying to make?" The ultimate question: (c) "whether the statement was material to the decision," requires applying the legal standard of materiality . . . to these historical facts.

Id. at 512. The Court described the legal standard of materiality as follows: "The statement must have 'a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" Id. at 509 (alteration in original) (quoting Kungys v. United States, 485 U.S. 759, 770 (1988)). However, "[a]ctual influence or reliance by a government agency is not required. The statement may still be material 'even if it is ignored or never

read by the agency receiving the misstatement.'" Puente, 982 F.2d at 159 (quoting United States v. Swaim, 757 F.2d 1530, 1534 (5th Cir. 1985)). "[T]he standard for a § 1001 violation is not whether the false statement actually influenced a government decision or even whether it probably influenced the decision; the standard is whether the misrepresentation was capable of influencing the agency decision." Id.

Applying this analytical framework, the jury could reasonably answer the first question that the statement at issue was Jimenez's response that she had not heard from the State Department regarding her 1991 passport application. The government argues two possible answers to the second question regarding what decision was being made: (1) whether Jimenez was eligible to receive a passport or (2) whether to further investigate or prosecute the statements on the 2007 application. The third part of the inquiry requires determining whether the interview statement was capable of influencing either of these decisions.

We find persuasive the government's argument that Jimenez's statement—that she had not heard from the State Department regarding her 1991 passport application—is material to the decision whether she was eligible to receive a passport. While the State Department may have already been aware of both the fact of the correspondence and its contents, our precedent makes clear that the subjective knowledge of an agent or agency that a statement is false does not factor into the materiality analysis. See United States v. Edwards, 303 F.3d 606, 637 (5th Cir. 2002) (rejecting the proposition, urged by the defendant, "that materiality is lacking [where] the government never believed [the] lies"). Instead, we ask whether "the functioning of the federal agency involved would . . . have been impaired had the agency relied on the defendant's statement." Swaim, 757 F.2d at 1535; see also United States v. McIntosh, 655 F.2d 80, 83 (5th Cir. 1981) ("It is enough that 'the potential for subversion of an

agency's functioning [can] readily be inferred.'" (alteration in original) (quoting United States v. Beer, 518 F.2d 168, 172 (5th Cir. 1975))).

There is sufficient evidence to support the jury's finding of materiality. Agent Hays testified that Jimenez was not issued a passport after her original application in 1991 because "[t]here was still doubt as to the defendant's true citizenship." He further testified that after Jimenez filed a second application in 2007, the State Department began investigating "to determine whether the defendant was entitled to a United States passport, specifically to determine whether the defendant was, in fact, a United States citizen." Agent Hays testified that during the interview, Jimenez denied hearing from the State Department regarding her original application. The government's evidence showed that the State Department had requested additional biographical information from Jimenez in connection with her 1991 application to substantiate her claim of citizenship and that Jimenez had responded by submitting her baptismal certificate and a supplemental information form. Agent Hays testified that the State Department's determination that the information Jimenez submitted was insufficient to issue her a passport contributed to the decision to place a fraud alert on her file.

We conclude that a rational juror could have readily inferred that the State Department, had it relied on Jimenez's statement that she had not heard from the State Department in connection with her 1991 application, could have decided the question of Jimenez's eligibility for a passport without the benefit of the earlier correspondence—specifically her biographical information—which had resulted in the State Department's determination that she had failed to establish eligibility. Under the legal standard above, there is sufficient evidence that Jimenez's false statement was "capable of influencing" the State Department's decision on her eligibility for a passport in 2007, and thus sufficient evidence to support a finding of materiality.

This conclusion finds support in our decision in McIntosh. In that case, the defendant, a loan closing attorney for the Farmers Home Administration, was convicted of making false statements in a loan closing statement. McIntosh, 655 F.2d at 82. The false statements consisted of a statement that all creditors had been paid and that his fee was $2,000 instead of the authorized $1,000. Id. We found sufficient evidence of materiality in testimony about the purposes of the loan program and that the loan agreement called for mandatory payments to named creditors. Id. at 83. From this information, it was "readily inferable" that had the Administration relied on the false statements, its functioning could have been subverted. Id. Here, Agent Hays testified that the purpose of the 2007 investigation was to determine Jimenez's citizenship and eligibility for a passport, and the earlier correspondence contained information that bore directly on that determination. From this, a juror could readily infer that the State Department, had it relied on Jimenez's effective denial of the existence of the correspondence, could have made a determination of her citizenship and eligibility without the benefit of her biographical information. Like the false statements in McIntosh, this statement was capable of influencing a decision, and the jury was entitled to find it material.

Additionally, in Puente, a contractor submitted a bid on a renovation project funded by the Department of Housing and Urban Development. Puente, 982 F.2d at 158. Two of the principal officers of the contractor had prior felony convictions, but they signed forms certifying, inter alia, that they had no prior felony convictions. Id. We found that this false statement was material even though the Department did not have a rule forbidding the award of contracts to prior felons because the "misrepresentation deprived HUD of the opportunity to determine, based upon all relevant information, which bidder was best qualified to complete the job." Id. at 159. Here, Jimenez's false statement, had it been relied upon, would similarly have deprived the State Department of information

relevant to determining her citizenship and eligibility for a passport. Like the false statement in Puente, Jimenez's false statement was "'capable of affecting or influencing' the agency's decision." Id. We decline to find evidence of materiality lacking here because to do so would impose a formalistic obligation on government witnesses to recite magic words and needlessly prohibit jurors from using the very reasoning facilities which we demand of them.

Because we accept the government's argument that Jimenez's statements were material to the decision of whether to issue her a passport, we need not address its argument that Jimenez's statements were material because they could have impaired the State Department's ability to investigate the statements she made in her 2007 passport application.

### III

Finally, Jimenez contends that the district court erred in excluding certain defense witnesses' testimony. She argues that the exclusion of the evidence in question limited her Sixth Amendment right to present a defense.

The right to present a complete defense under the Sixth Amendment "is an essential attribute of the adversary system." United States v. Ramos, 537 F.3d 439, 448 (5th Cir. 2008). However, this right is not without limits. Id. "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissable under standard rules of evidence." Taylor v. Illinois, 484 U.S. 400, 409 (1988). We review a district court's evidentiary rulings for abuse of discretion. United States v. Posada Carriles, 541 F.3d 344, 353 (5th Cir. 2008).

### A

Jimenez sought to offer the testimony of Rosa Maria Moreno, the court reporter for the judge who issued her delayed birth certificate, to clarify that in her experience, such proceedings were conducted in chambers, off the record. Defense counsel argued that this testimony would support Jimenez's own

testimony, would explain why there was no record of the proceeding, and would rebut Agent Hays's testimony that the delayed birth certificate was unreliable. Defense counsel argued that excluding evidence that the delayed birth certificate was obtained in the normal course would create an impression that there was something different, and less reliable, about Jimenez's case. The district court excluded the evidence. This evidence appears to be of minimal relevance. The government did not challenge the delayed birth certificate on the basis that it was obtained in chambers or that there was not a record of the proceedings through which it was obtained. But even if it was error to exclude this testimony, the error was harmless. This evidence, tending to support an inference that the delayed birth certificate was properly obtained, would have been relevant only to Counts One and Two, dealing with the false claims of U.S. citizenship. The jury acquitted on both of those counts.

## B

Jimenez also made an offer of proof as to the testimony that her son, Alejandro Ruiz, would have offered. The government introduced a Mexican birth certificate record for Jimenez's grandson (Ruiz's son). That record reflected that Jimenez was the child's paternal grandmother and listed her nationality as Mexican. Jimenez wanted Ruiz to explain why he indicated Jimenez's nationality as Mexican. Defense counsel argued that the testimony was relevant because Agent Hays had previously testified that he relied on the grandson's birth record in deciding that Jimenez was more likely a Mexican, rather than an American citizen. Ruiz would have testified that he considered his mother to be Mexican although he had always known that she was born in El Paso, Texas and was aware that she had a Texas birth certificate. Defense counsel argued to the district court that the evidence was admissible under FED. R. EVID. 803(19), but the district court rejected that argument and defense counsel does not raise it on appeal. It appears that this evidence was largely hearsay and not admissible.

Ruiz's understanding of where his mother was born came from his mother—he obviously was not present at her birth. Even were this error, it would be harmless for the same reason that excluding Moreno's testimony was harmless.

C

Finally, Jimenez challenges the limitations placed on her own testimony. She was not allowed to testify: (1) whether she knew that her interview with Agent Hays was part of a criminal investigation; (2) that Agent Hays gave her an opportunity to return to Mexico without being arrested if she confessed to a false claim of U.S. citizenship; and (3) that after Jimenez obtained her delayed birth certificate, she used it as proof of citizenship to obtain legal permanent residency for her husband, that she and her husband paid taxes, and they never sought government assistance (e.g. food stamps, Medicaid, etc.).

Jimenez argues that whether she knew that her interview with Agent Hays was part of a criminal investigation was relevant to explain her state of mind at the time of the interview. Although we are troubled that Jimenez was not informed that Agent Hays's investigation was criminal in nature, we find no error in the district court's decision to exclude Jimenez's testimony on this point. Jimenez was allowed to testify about her state of mind. She was asked what her attitude and demeanor were and she responded "calm." Second, the government is correct that whether an investigation is criminal or not has no impact on whether a false statement made to a government official may be prosecuted under 18 U.S.C. § 1001.

The district court sustained the government's relevance objection as to Jimenez's testimony that Agent Hays allegedly offered that she could return to Mexico without arrest. Jimenez contends that this testimony was relevant to show her state of mind. The government argues that this testimony was properly excluded as irrelevant. However, this evidence does appear to be admissible to impeach Agent Hays's testimony that he made no such offer.

Testimony that would tend to impeach the government's main witness, if believed by the jury, is relevant and admissible. See United States v. Davis, 639 F.2d 239, 244–45 (5th Cir. 1981) (holding that the district court exceeded its discretion in excluding testimony proffered to discredit the key government witness). This error was not of constitutional proportions. Had this testimony been allowed, it certainly could have tarnished Agent Hays's credibility. But the jury need not have found Agent Hays's testimony about what occurred during the interview credible in order to convict Jimenez on Count Three for making a false statement in her passport application. With respect to Count Four, Jimenez admitted giving the "no" answer to Agent Hays's question that was central to that Count. Thus, any error in failing to admit Jimenez's testimony does not require reversal.

Jimenez contends that excluded testimony that she used her delayed birth certificate as proof of citizenship generally supported her credibility and good faith belief in her citizenship claim. Any error in excluding this evidence was harmless because the jury acquitted on the false citizenship counts.

IV

For the foregoing reasons, the convictions on Counts Three and Four are AFFIRMED.