# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 24, 2014

Lyle W. Cayce
Clerk

No. 12-20441

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOSE ALBERTO DELEON; JOSELITO FLORES MERCADO,

Defendants-Appellants.

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CR-393-2

Before STEWART, Chief Judge, and DENNIS, Circuit Judge, and GILSTRAP[1],
District Judge.

PER CURIAM:[*]

Joselito Flores Mercado was convicted by a jury of conspiring to possess
with intent to distribute 100 kilograms or more of marijuana in violation of 21
U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B)(vii), and aiding and abetting the
possession with intent to distribute 100 kilograms or more of marijuana in
violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii) and 18 U.S.C § 2.  He

---

[1] District Judge of the Eastern District of Texas, sitting by designation.

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 12-20441

received concurrent sentences of 97 months in prison to be followed by a four-year term of supervised release.   Prior to Mercado's trial, Mercado's codefendant, Jose Alberto Deleon, made a motion to sever the trials, which the district court granted.   Deleon testified against Mercado at his trial.   Deleon then waived his right to a jury trial and the parties stipulated to much of the trial testimony and all of the exhibits from Mercado's jury trial.   Deleon was convicted at a bench trial of aiding and abetting the possession with intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii), and 18 U.S.C § 2 and acquitted on the conspiracy count.   He received a sentence of 22 months in prison with no supervised release term.   Both Defendants appeal various issues.   We affirm the district court in all respects.

## I.

Deleon and the government presented, in relevant part, the following sequence of events at Mercado's trial.   Deleon was approached by Mercado at Lowes on April 18th.   Deleon and Mercado did not know each other prior to this encounter.   Mercado offered to pay Deleon in exchange for his help in removing lids from some shipping crates the next day at a nearby warehouse.   The next morning, Mercado met a tractor-trailer at his warehouse and by forklift removed two large wooden shipping crates.   Deleon met Mercado and assisted with removing the lids.   In the crates were auto parts and underneath them there were metal boxes.   Mercado offered to pay Deleon more if he helped open the metal boxes.   They drove to a nearby pawn shop to obtain the tools necessary to cut into the boxes.   Deleon opened the boxes and saw bundles of drugs.   According to Deleon, he "thought they were drugs but did not know exactly that they were drugs."   At Mercado's request, Deleon carried the numbered bundles to the back of the warehouse where Mercado stored them

2

before closing up.  Mercado sorted and briefly opened them before closing them.  At that point, Deleon testified that he had confirmed his suspicions and knew marijuana was in the bundles.  The shipment contained 91 bundles totaling 1,915 pounds of marijuana.  Mercado paid Deleon and Deleon left.  Mercado stopped briefly at a warehouse garage nearby, spoke to a worker there, and then drove away.

Unbeknownst to Mercado and Deleon, Mercado's warehouse was under surveillance by the U.S. Drug Enforcement Administration ("DEA").  A DEA agent, Keith Jones, was monitoring the remote feed when he saw the suspicious activity.  He mobilized a group of officers and waited until the men left separately.  The officers followed Deleon and approached him when he stopped at a roadside taqueria.  He stated that "perhaps" there was marijuana at the warehouse and agreed to accompany the officers back to the warehouse.  Another group of officers had followed Mercado and a local officer stopped him for a traffic violation.  The officer asked about the drugs in his warehouse and Mercado stated that he was helping a friend and did not know what was in the shipping crates.  He gave verbal and written consent to a search.  Although the officer initially noted Mercado appeared nervous, he became more relaxed as the conversation continued.

At the warehouse, officers found, *inter alia*, the crates, the drugs, a gun, and another opened bundle of marijuana inside Mercado's office that was a different shape and in different packaging.  That bundle had been delivered prior to this shipment.  Deleon testified that he removed this bundle from the cabinet at Mercado's request and was told that it was better than what was delivered that morning.  The officers arrested Mercado and he told Agent Jones he had unloaded the drugs for a friend.  Mercado said he expected someone to call to come and pick up the drugs.  Agent Jones testified that nothing in

Mercado's demeanor would have led him to believe that Mercado was forced to accept the drugs.

The officers also searched Deleon's white van and found a scale, bags, and other items that could be used in drug trafficking. However, Deleon had a plausible innocent explanation for each item. Mercado and Deleon were jailed together and Deleon testified that he told Mercado to tell the truth so that he could leave. Deleon testified that Mercado stated he had more drugs and money at his house, it was a good thing the cops had not followed him there, and he had been drug trafficking for a while.

Mercado testified in his own defense, as did his wife, and presented, in relevant part, the following version of events. He stated that in January two men from Mexico came to his warehouse and offered him $1,500 to accept a shipment of auto parts and to store them in the warehouse until the men could get them. Mercado agreed to do this. The two men returned later in April to see if Mercado had rented a forklift to move the shipment of auto parts. He was told to expect the delivery on April 18th but when it did not come he was informed it would be there the next day. Mercado testified that the paperwork looked legitimate and he did not know there were drugs in the crates when he placed them in the warehouse. When the crates arrived, he called the men to confirm receipt. He testified that they told him that someone was outside waiting to retrieve the shipment. That person ended up being Deleon. Deleon then inspected the crates and asked Mercado to take him to buy tools. They bought the tools and came back to the warehouse.

Back at the warehouse, Mercado was informed by phone that there were narcotics in the crates and that if he called the police or did not help the drug traffickers, they would kill him or his wife and kids. He was also told that two "soldiers" were outside the warehouse and he understood the threat as

4

immediate. He then helped Deleon unload the marijuana. He saw Deleon open some of the bundles and saw Deleon identify one bundle as "the good stuff," which Deleon sampled and placed in Mercado's office. After unloading, Deleon spoke to someone by phone and told Mercado he would be back at 6:00 p.m. Mercado remained at his warehouse alone for a few minutes then went to a neighboring warehouse, intending to ask the workers there to call the police but he was unable to communicate this. A worker at the warehouse testified that Mercado seemed a little nervous, was probably scared, and was sweating. He stated that Mercado acted like he wanted to say something but could not.

Mercado then decided to go home and secure his family. He testified that he called his wife on the way and told her there was a very serious problem they needed to talk about. His wife testified that he sounded nervous, was breathing hard, and that what he said had frightened her. His plan was to call the police once his family was safe but he was stopped by the local officer while on the phone with his wife. Mercado testified that he had no other drugs or money at his house and that Deleon was lying. In fact, he stated that Deleon had offered him $50,000 to take the fall for him.

Mercado's wife testified that once she had heard of her husband's arrest she called an attorney, Abraham Fisch ("Fisch"), and that she and Mercado met with him one week after his arrest. Fish allegedly told Mercado information about Deleon that made Mercado and his wife fearful for themselves and their family. Because of these fears, Mercado never told the police about the threat he claims to have received. Mercado's wife testified that Fisch suggested they not trust the police and that they would not believe Mercado's story. He advised that they tell the story to a jury. She also testified that her brother is a law enforcement officer and she was studying for a career in law enforcement.

## II.

On appeal, Mercado challenges: (1) the sufficiency of the evidence to support his conspiracy conviction; (2) the district court's decision not to instruct the jury on his duress defense; (3) the district court's decision not to allow Fisch to testify and Mercado to recall Agent Jones; and (4) the denial of his motion for a mistrial after Agent Jones testified about information as to Mercado's illegal activities prior to Mercado's arrest, evidence that was earlier excluded by the court. Deleon challenges only the sufficiency of the evidence to support his conviction.

## A.

To convict Mercado of conspiracy to possess with the intent to distribute, the government was required to prove that: "(1) an agreement existed between two or more persons to violate federal narcotics law, (2) the defendant knew of the existence of the agreement, and (3) the defendant voluntarily participated in the conspiracy." *United States v. Thomas*, 690 F.3d 358, 366 (5th Cir. 2012). Mercado argues that the evidence is insufficient to support his conspiracy conviction because there was no evidence that he knew of or participated in an agreement to possess with intent to distribute marijuana. We review "preserved challenges to the sufficiency of the evidence de novo." *United States v. Grant*, 683 F.3d 639, 642 (5th Cir. 2012). We "view all evidence . . . in the light most favorable to the government, with all reasonable inferences and credibility choices to be made in support of the jury's verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). "[K]nowledge of a conspiracy and voluntary participation may be inferred from a collection of circumstances." *Thomas*, 690 F.3d at 367 (internal quotation marks and citation omitted) (alteration in original).

The direct evidence presented at trial was sufficient for a reasonable factfinder to determine that Mercado voluntarily participated in an agreement to violate the narcotics laws with either Deleon or the suppliers of the marijuana. *See Thomas*, 690 F.3d at 367–68 (holding that the government presented sufficient evidence of a defendant's knowledge and voluntary participation in the conspiracy given the collection of circumstances); *United States v. Booker*, 334 F.3d 406, 409–11 (5th Cir. 2003) (holding evidence sufficient to support two defendants conspiracy charges). Mercado's argument ignores the evidence presented by Deleon that Mercado knew about the drugs, was expecting a shipment, had hired Deleon with the intent to obtain access to the drugs, and had been involved in drug trafficking for a period of time. Although Mercado testified that he had no knowledge of the marijuana before it was delivered, the jury was entitled to choose among reasonable constructions of the evidence. *See United States v. Mitchell*, 484 F.3d 762, 768 (5th Cir. 2007) ("The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." (internal quotation marks and citation omitted)).

## B.

Mercado contends that the district court erred in denying his request to instruct the jury as to the defense of duress. The affirmative defense of duress requires a showing by the defendant that (1) he was "under an unlawful, present, imminent, and impending [threat] that would induce a well-grounded apprehension of death or serious bodily injury," (2) that he had not "recklessly or negligently placed himself in the situation" at issue, (3) that he "had no reasonable legal alternative to violating the law" that would also avoid the threatened harm, and (4) that it was reasonable to anticipate that the

avoidance of harm directly caused the criminal actions. *United States v. Posada-Rios*, 158 F.3d 832, 873 (5th Cir. 1998). The defendant must provide evidence of each of the elements before it may be presented to the jury because it is an affirmative defense. *Id.* "In determining whether a defendant has made a threshold showing of the elements of the defense a court must objectively evaluate the facts presented by the defendant." *Id.* (citation omitted). We review a district court's refusal to submit a requested jury instruction only for abuse of discretion. *Id.* at 875.

We hold that there was no abuse of discretion by the district court in refusing to instruct the jury on Mercado's duress defense.[2] Mercado has not put forth evidence demonstrating that he had no available alternatives to his illegal activity. *See id.* at 873–75. A defendant must show "that he had actually tried the alternative or had no time to try it, or that a history of futile attempts revealed the illusionary benefit of the alternative," in order to establish the absence of a legal alternative. *Id.* at 874 (internal quotation marks and citation omitted). Mercado could have called the police, told others to call, or explained the situation to police at several points including when he was: outside of Deleon's presence, left by Deleon at the warehouse, at the nearby garage, in the car on his way home, or stopped by the police.

Mercado's arguments on appeal are unavailing. Mercado argues that he feared the police could not protect his family and that they would not believe him. He contends that calling the police prior to securing his family was not a reasonable alternative in light of the nature of the threats and that "soldiers" were watching his warehouse. He urges that he was avoiding his death and

---

[2] The district court stated that it thought "very seriously" about Mercado's argument. Ultimately, the district court decided that given the fact that Mercado could have made phone calls outside the presence of Deleon, after Deleon left the premises, and certainly when he was alone in the car, he had not made the requisite showing necessary for the instruction.

the death of his wife and children by not contacting the police. However, his "subjective belief as to available legal alternatives is not determinative." *Posada-Rios*, 158 F.3d at 874 (internal quotation marks and citation omitted). Further, once he was actually stopped by the police and asked specifically about the drugs, he failed to communicate any of the threats to himself or to his family.[3] The district court did not abuse its discretion given the facts of this case.

## C.

Mercado asserts that the district court violated his right to confront witnesses and present a complete defense in violation of the Sixth Amendment. He contends that he should have been allowed to call Fisch and to recall Agent Jones. We review the alleged denial of a defendant's rights under the Sixth Amendment de novo, subject to review for harmless error. *United States v. Skelton*, 514 F.3d 433, 438 (5th Cir. 2008). A defendant's right to present a complete defense under the Sixth Amendment is "an essential attribute" of our criminal justice system but it is not without limits. *United States v. Najera Jimenez*, 593 F.3d 391, 402 (5th Cir. 2010) (internal quotation marks and citation omitted). A defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Id.* (internal quotation marks and citation

---

[3] Mercado makes an argument that duress only applies at the time the offense is actually committed and because he was no longer in possession of the drugs once he left the warehouse, his failure to call the police after leaving should have no bearing on the elements of the duress defense. We need not address this argument because the offenses of conspiracy and possession were continuing criminal acts even after he physically left the warehouse. *See United States v. Schorovsky*, 202 F.3d 727, 729 (5th Cir. 2000) (holding that a defendant is presumed to continue involvement in a conspiracy unless a defendant makes an "affirmative showing of withdrawal, abandonment, or defeat of the conspiratorial purpose"); *United States v. Daniels*, 723 F.3d 562, 579 n.24 (stating that possession is "actual or constructive, and a defendant who knowingly has ownership, dominion, or control over drugs or over the premises" concealing the drugs has possession of them).

omitted). "We review a district court's evidentiary rulings for abuse of discretion." *Id.* (citation omitted).

Mercado contends that he wanted to call Fisch as a witness because Fisch could have provided information regarding Mercado's duress defense and his reasons for not reporting the threats to law enforcement. However, Mercado did not speak with Fisch until a week after the events occurred when he was released on bond. Because Fisch's testimony would not have made it more probable that Mercado faced a real and immediate threat on the date of his arrest and did not establish the lack of reasonable alternatives to his continued illegal activities, Mercado has failed to establish that his right to present a defense was impeded by his inability to call Fisch as a witness. *See United States v. Jimenez-Montoya*, 348 F. App'x 73, 75–76 (5th Cir. 2009) (per curiam) (unpublished) (holding that a defense witness was properly excluded because the witness' testimony was irrelevant to the defendant's defense); Fed. R. Evid. 401; *see also United States v. Dixon*, 413 F.3d 520, 523–24 (5th Cir. 2005) (upholding the exclusion of expert testimony to the extent the testimony would have affirmed the defendant's subjective perceptions of danger, which was not relevant to a duress defense).

With respect to Agent Jones, Mercado contends that he was entitled to recall him to testify about his testimony at Deleon's detention hearing. At that hearing, Jones testified that he was told by another officer that Deleon had provided a different explanation for his presence at the warehouse. That explanation contradicted Deleon's trial testimony. The district court correctly concluded that the testimony was inadmissible as hearsay within hearsay. *See United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 508 (5th Cir. 2008); Fed. R. Evid. 805. Mercado has not established that his inability to recall Jones violated his Sixth Amendment rights. *See Skelton*, 514 F.3d at 438. Moreover,

he has not shown that the two adverse evidentiary rulings constituted an abuse of discretion. *See Najera Jimenez*, 539 F.3d at 402.

### D.

In his final ground for relief, Mercado asserts that the district court erred in denying his request for a mistrial after Jones testified that law enforcement officials had prior information regarding Mercado's involvement in drug activities, a matter on which the government had agreed not to adduce specific testimony. "We review a denial of a motion for mistrial for abuse of discretion." *United States v. Zamora*, 661 F.3d 200, 211 (5th Cir. 2011) (citation omitted). A new trial is required only when the statement is so prejudicial, viewed in light of the entire record, that it had a substantial impact on the jury verdict. *Id.* "We give great weight to the trial court's assessment of the prejudicial effect of the evidence, and prejudice may be rendered harmless by a curative instruction." *United States v. Valles*, 484 F.3d 745, 756 (5th Cir. 2007). The statement in question constituted a single statement in a multi-day trial, which was immediately stricken by the court. The district court also advised the jury to disregard the statement. Mercado has not established that the district court abused its discretion in denying his motion for a mistrial. *See Zamora*, 661 F.3d at 211–12; *Valles*, 484 F.3d at 756; *United States v Millsaps*, 157 F.3d 989, 993 (5th Cir. 1998).

### E.

In his only ground for relief, Deleon asserts that the evidence is insufficient to support his conviction. When a defendant challenges the sufficiency of the evidence to sustain his conviction following a bench trial, we review the district court's finding of guilt to determine whether it is supported by "any substantial evidence." *United States v. Ceballos-Torres*, 218 F.3d 409, 411 (5th Cir. 2000) (internal quotation marks and citation omitted). The

evidence is sufficient if, when considered as a whole and in the light most favorable to upholding the conviction, it would permit a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *United States v. Allen*, 587 F.3d 246, 256 (5th Cir. 2009).

Aiding and abetting requires proof that the substantive offense occurred and that the defendant "(1) associated with the criminal venture; (2) purposefully participated in the crime; and (3) sought by his actions for it to succeed." *United States v. Pando Franco*, 503 F.3d 389, 394 (5th Cir. 2007). Deleon does not dispute the existence of an underlying marijuana offense; instead, he contends that the evidence does not establish that he aided and abetted the crime. The stipulated evidence at his trial showed that he continued to unload the marijuana after realizing that the packages were in fact marijuana. He did not stop once he realized the illegal nature of the activity; instead, he continued his association with Mercado and intentionally continued participating in the illegal enterprise. He was willing to do so in return for payment. Because substantial evidence supports the finding of guilt, Deleon is not entitled to reversal. *See id.*; *Ceballos-Torres*, 218 F.3d at 411; *Allen*, 587 F.3d at 256.

**III.**

Neither Deleon nor Mercado has established reversible error with respect to their convictions. Consequently, the judgments of the district court are AFFIRMED.