# United States Court of Appeals for the Fifth Circuit

---

No. 23-50583

---

United States Court of Appeals
Fifth Circuit

**FILED**

September 3, 2024

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

JOSE ESTRADA-AGUIRRE,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:22-CR-108-1

---

Before SOUTHWICK, HAYNES, and DOUGLAS, *Circuit Judges*.

PER CURIAM:[*]

Jose Estrada-Aguirre appeals his convictions for making a false statement in an application for a passport and perjury. In 2006, he was charged with making a false claim to United States citizenship and illegal reentry and was acquitted. He asserts that in the 2006 trial, the jury found that he was born in Hot Springs, Brewster County, Texas, as Jose Lopez Aguirre, or at a minimum, that he was born in the United States. He filed a

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

motion to dismiss the indictment and exclude evidence in this case, arguing that the Government was collaterally estopped from relitigating these issues. The district court denied the motion, and the jury convicted him of both charges. On appeal, Estrada-Aguirre contends (1) the district court erred in denying his motion and (2) there was insufficient evidence for his conviction. We AFFIRM.

## I.    Collateral Estoppel

We review de novo whether a prosecution violates the Double Jeopardy Clause or is precluded by collateral estoppel. *United States v. Brown*, 571 F.3d 492, 497 (5th Cir. 2009); *see also United States v. Auzenne*, 30 F.4th 458, 462 (5th Cir. 2022). A district court's factual findings are generally reviewed for clear error. *United States v. Luyten*, 966 F.3d 329, 332 (5th Cir. 2020).

"The doctrine of collateral estoppel is incorporated into the Double Jeopardy Clause." *United States v. Brackett*, 113 F.3d 1396, 1398 (5th Cir. 1997). Under our precedent, "collateral estoppel may affect successive criminal prosecutions in one of two ways." *Auzenne*, 30 F.4th at 463 (quotation omitted). First, collateral estoppel may "completely bar a subsequent prosecution . . . if one of the facts necessarily determined in the former trial is an essential element of the subsequent prosecution." *Id.* (quotation omitted). Second, if the subsequent prosecution is not barred, collateral estoppel may still "prohibit[] the introduction or argumentation of facts necessarily decided in the prior proceeding." *Id.* (internal quotation marks and citation omitted). The defendant bears the burden of establishing that the prior jury necessarily decided the issues he seeks to foreclose. *Brackett*, 113 F.3d at 1398.

Here, Estrada-Aguirre has not met his burden of establishing that the 2006 jury necessarily found that he was born in Hot Springs, Brewster

County, as Jose Lopez Aguirre. Although the jury acquitted Estrada-Aguirre of making a false claim to United States citizenship and illegal reentry, the trial created confusion around his actual name and place of birth. As the district court noted, defense counsel referred to Estrada-Aguirre as several different names at the 2006 trial, including Jose Aguilar, Mr. Aguilar, Mr. Estrada, Mr. Lopez Aguirre, Aguirre-Estrada, and Jose Aguirre. Further, the trial record shows competing evidence regarding Estrada-Aguirre's place of birth. A delayed birth certificate stated that he was born in Hot Springs in Brewster County. But his mother testified that he was born in Indian Hot Springs in Hudspeth County, which she admitted was "far from" Hot Springs in Brewster County. The jury could have rationally determined that Estrada-Aguirre was born in the United States without necessarily determining his birth name and exact county of birth, or the jury could have determined the Government failed to prove the other elements of the offenses beyond a reasonable doubt.

But even if the jury necessarily determined, at a minimum, that Estrada-Aguirre is a United States citizen, his challenge still fails. First, the successive prosecution is not barred because citizenship does not "constitute [an] essential element[] of the offense[s] in the second trial." *See Bolden v. Warden, W. Tenn. High Sec. Facility*, 194 F.3d 579, 584 (5th Cir. 1999); *see also Auzenne*, 30 F.4th at 463. To obtain a conviction under 18 U.S.C. § 1542, the Government was required to prove that Estrada-Aguirre "willfully and knowingly ma[de] any false statement in an application for a passport with intent to induce or secure the issuance of a passport under the authority of the United States."[1] *United States v. Najera Jimenez*, 593 F.3d 391, 398 (5th

---

[1] This false statement need not be material to a defendant's application. *United States v. Najera Jimenez*, 593 F.3d 391, 398 (5th Cir. 2010) ("Had Congress intended to require a 'material' false statement, it would have said so directly.").

Cir. 2010) (quoting 18 U.S.C. § 1542).  To obtain a conviction for perjury, the Government was required to "prove that his statements were false and that he did not believe them to be true." *United States v. Fulbright*, 804 F.2d 847, 851 (5th Cir. 1986) (quotation omitted).  The jury in the second trial could have found that Estrada-Aguirre made a false statement as to his name and place of birth, without making a finding as to his citizenship.  Thus, the record does not reflect that "it would have been *irrational* for the jury in the first trial to acquit without finding in [Estrada-Aguirre's] favor on a fact essential to the conviction in the second." *Currier v. Virginia*, 585 U.S. 493, 500 (2018) (internal quotation marks and citation omitted).

Second, the Government was not precluded from introducing evidence to show that Estrada-Aguirre was not born in the United States.  As discussed above, the 2006 jury acquitted Estrada-Aguirre of making a false claim to United States citizenship and illegal reentry.  But "an acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof." *Dowling v. United States*, 493 U.S. 342, 349 (1990); *see also Brackett*, 113 F.3d at 1401 (holding that "collateral estoppel d[id] not bar the government from relitigating evidence originally offered in the [first] trial, because the burden of proof governing the admissibility of evidence in the [second] prosecution is lower than the burden of proof required to establish an ultimate issue in the [first] trial").  In the second trial, the Government did not have to prove beyond a reasonable doubt that Estrada-Aguirre was not born in the United States.  Evidence of his birthplace was instead relevant to show whether he knowingly made a false statement on his passport application.  Because such evidence in the second trial was governed by a lower standard of proof, Estrada-Aguirre's preclusion argument fails.

Accordingly, Estrada-Aguirre has not shown the district court erred in denying his motion to dismiss his indictment or exclude evidence.

4

## II.    Sufficiency of the Evidence

Estrada-Aguirre argues the evidence was insufficient to support his convictions.  Because he preserved a sufficiency challenge for appeal by moving for a judgment of acquittal after the Government's case in chief, and at the close of all the evidence, we review the sufficiency of the evidence de novo. *See United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007).

If the evidence is viewed in the light most favorable to the verdict, it was sufficient to support Estrada-Aguirre's conviction for making a false statement in his passport application. *See Najera Jimenez*, 593 F.3d at 397–99.  The Government contends that he made the following false statements on the application: (1) his name was Jose Lopez Aguirre; (2) he was born in Hot Springs, Texas; (3) he did not list other names that he has used; and (4) he did not list his prior federal and state drug convictions.  Estrada-Aguirre argues that he reasonably relied on the name and birthplace in his delayed birth certificate.  But there was evidence that, at the time of his passport application, he was aware that he had used the name Jose Estrada-Aguirre until age 37 and he had two Mexican birth certificates listing this name.  He also submitted his Mexican birth certificate to obtain an immigrant visa, using the name Estrada-Aguirre.  His mother did not obtain the delayed birth certificate until 2002.  After his acquittal in 2006, an immigration judge subsequently rejected his claim to United States citizenship based on the delayed birth certificate and ordered him to be removed to Mexico.  Thus, there was evidence that Estrada-Aguirre was aware there were problems with the delayed birth certificate before he filed the passport application in 2013.  Accordingly, a reasonable jury could infer that, at the time he completed the passport application, he knew the information he provided was false and that

he knowingly and willfully made the false statements.[2] *See Najera Jimenez*, 593 F.3d at 397–99.

Finally, the evidence was also sufficient to support Estrada-Aguirre's conviction for perjury. *See Fulbright*, 804 F.2d at 851. The instructions to the passport application specifically state that by signing the form, the applicant was declaring under penalty of perjury that, among other things, "the statements made on the application are true and correct" and that he has "not knowingly and willfully made false statements . . . in support of this application." Given that the evidence was sufficient to establish that he knowingly and willfully made false statements in the application, *see Najera Jimenez*, 593 F.3d at 397–99, the evidence was also sufficient to show that the application contained false statements, and he did not believe them to be true. *See* 18 U.S.C. § 1621(2); *see also Fulbright*, 804 F.2d at 851.

AFFIRMED.

---

[2] Because there was sufficient evidence for at least two of the false statements the Government raises, we need not address Estrada-Aguirre's arguments regarding his failure to list his prior names or drug convictions. *See Najera Jimenez*, 593 F.3d at 398 (holding that "any false statement, knowingly and willfully made, suffices" to support a conviction under 18 U.S.C. § 1542). However, we note that we disagree with Estrada-Aguirre's assertion that he was not required to disclose his drug convictions because he did not "acquire" citizenship. The application requests the disclosure of "acts or conditions [that] have been performed by or apply to the applicant." This language clearly applies to all applicants rather than those who later acquired United States citizenship, which accurately reflects the Government's general concern with the use of passports to transport drugs.