# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 25, 2026

Lyle W. Cayce
Clerk

No. 25-60247

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

ZIPORA HUDSON,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:24-CR-5-1

_____

Before HAYNES, HIGGINSON, and HO, *Circuit Judges*.

PER CURIAM:[*]

Zipora Hudson appeals her conviction for conspiracy to commit wire fraud and conspiracy to commit money laundering. She challenges only the sufficiency of the evidence supporting her conviction. Because a reasonable jury could find her guilty on both counts, we affirm.

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 25-60247

## I.

Zipora Hudson was indicted for conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1349 and 1343, and conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(h) and (a)(1).[1] At trial, the government presented the following evidence:

Hudson owned Zippy Bee tax service. She employed her son, Montreal Hudson, and two other individuals, Deandre Jones and Carolyn Jones. Hudson had numerous long-time clients for whom she had provided tax services for many years.

In addition to preparing her clients' taxes, Hudson also began consulting with clients about their eligibility for Paycheck Protection Plan ("PPP") loans.[2] After discussing the loans, she referred clients to her son, Montreal, to complete the PPP loan paperwork. Hudson recommended these clients apply for PPP loans despite knowing they didn't qualify. Montreal Hudson then completed these clients' loan applications without asking them for any of the requisite application information.

Clients were charged approximately $2,000 for each fraudulent PPP loan they received. Clients paid these loan "kickbacks" directly to either Montreal Hudson or Carolyn Jones. At trial, multiple clients testified that they knew very little about the PPP loan eligibility requirements and that they

---

[1] Hudson was indicted on five additional counts, but the government moved to dismiss these additional counts at the close of trial.

[2] "During the COVID-19 pandemic, Congress created the Paycheck Protection Program [] to help eligible small businesses maintain payroll amid government shutdowns of the economy. *See* Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116–136, § 1102, 134 Stat. 281, 286–94 (2020)." *Bruckner Truck Sales, Inc. v. Guzman*, 148 F.4th 341, 344 (5th Cir. 2025).

had simply followed Hudson's advice and applied for the loans with Montreal Hudson's help.

Following the close of evidence, the jury convicted Zipora Hudson and Montreal Hudson of conspiracy to commit wire fraud and conspiracy to commit money laundering. Zipora Hudson moved the court for a judgment of acquittal following the government's close of evidence and again after resting her defense. The court denied both motions. She then filed a motion for a judgment of acquittal and a motion for new trial, which the court denied. She now appeals her conviction, arguing that the jury lacked sufficient evidence to convict her.

## II.

Because Hudson properly preserved her challenge to the sufficiency of the evidence, our review is de novo. *See United States v. Percel*, 553 F.3d 903, 910 (5th Cir. 2008); Fed. R. Crim. P. 29(a), (c)(1).

"[R]eview of a sufficiency-of-the-evidence challenge is highly deferential to the verdict." *United States v. Najera Jimenez*, 593 F.3d 391, 397 (5th Cir. 2010) (cleaned up). Any defendant "seeking reversal on the basis of insufficient evidence swims upstream." *United States v. Mulderig*, 120 F.3d 534, 546 (5th Cir. 1997). We will uphold the jury's verdict if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *Najera Jimenez*, 593 F.3d at 397 (cleaned up).

Hudson contends that the jury lacked sufficient evidence to convict her on both counts. We address each challenge in turn.

No. 25-60247

## III.

Hudson first challenges the sufficiency of the evidence underpinning her conviction for conspiracy to commit wire fraud. Notably, she doesn't contest that wire fraud occurred. Rather, she argues that the government failed to present any evidence that she was aware of or involved in the fraud.

To establish conspiracy to commit wire fraud, the government must prove that "(1) two or more persons made an agreement to commit wire fraud; (2) the defendant knew the unlawful purpose of the agreement; and (3) the defendant joined in the agreement willfully, *i.e.,* with specific intent." *United States v. Kuhrt*, 788 F.3d 403, 414 (5th Cir. 2015).

"Criminal conspiracies can be established on circumstantial evidence alone." *United States v. Sanders*, 952 F.3d 263, 273 (5th Cir. 2020). In fact, "a jury can infer from the surrounding circumstances whether a defendant participated in and knew of the conspiracy." *Id.* The "central feature of a conspiracy is the agreement, but it doesn't need to be formal or even spoken. It can be inferred from concert of action." *Id.* at 274 (internal citations omitted). But "[m]ere similarity of conduct among various persons and the fact that they have associated with or are related to each other is insufficient to prove an agreement." *United States v. Ganji*, 880 F.3d 760, 767–78 (5th Cir. 2018) (cleaned up).

Here, the government produced evidence that Hudson was not only aware of the fraud perpetrated by Montreal Hudson, but that she also actively participated in and furthered the fraud. The government presented evidence that Hudson discussed PPP loan applications with two long-time clients, Gloria Ealy and Debra Armstrong, despite knowing that neither individual owned a requisite business. Regardless, she directed both individuals to Montreal Hudson to complete PPP loan paperwork. Similarly, Sherry Simmons testified at trial that she met with Hudson to discuss PPP loans and

4

that Hudson directed her to Montreal Hudson to complete the loan paperwork, despite knowing that she didn't qualify for PPP loans.

Furthermore, the government presented evidence that Hudson orchestrated and directed the loan kickbacks paid by clients. Ezell Cashaw testified that, when one of his PPP loan applications was flagged as fraudulent, he requested Zippy Bee refund the $2,000 kickback he had already paid. Deandre Jones told Cashaw that he would have to ask Hudson for permission to repay the kickback.

Based on this evidence, a reasonable jury could have found that Hudson not only knew that Montreal Hudson was processing fraudulent PPP loans but also that she actively facilitated and directed this fraud.

## IV.

Hudson next challenges the sufficiency of the evidence underpinning her conviction for conspiracy to commit money laundering. She does not contest that money laundering occurred. Rather, she challenges only whether the government proved that she was aware of the money laundering and participated in it.

To establish a conspiracy to commit money laundering, the government must prove beyond a reasonable doubt that (1) "there was an agreement between two or more persons to commit money laundering," and (2) "that the defendant joined the agreement knowing its purpose and with the intent to further the illegal purpose." *United States v. Alaniz*, 726 F.3d 586, 601 (5th Cir. 2013).

Here, the government presented evidence that Hudson was not only aware that the wire fraud proceeds were being laundered through Zippy Bee, but also that she actively participated in laundering those proceeds. For each fraudulent PPP loan received, Hudson's clients paid approximately $2,000

directly to either Montreal Hudson or Carolyn Jones.  Ezell Cashaw testified that Hudson was not only aware of these kickbacks, but that she also had the final say whether clients could receive refunds.  Furthermore, the government presented evidence that Hudson personally benefited from the fraud.  During the time Hudson was perpetrating PPP loan fraud, both Hudson and Montreal Hudson made lavish purchases.  Hudson purchased a Maserati for $88,999 and Montreal Hudson purchased two residences.

Based on this evidence, a reasonable jury could have found that Hudson not only knew that illegal kickbacks were being laundered through Zippy Bee but also that she actively participated in the money laundering.

*    *    *

Because the government presented sufficient evidence for a reasonable jury to find Hudson guilty on both counts, the judgment of the district court is affirmed.